*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0243P (6th Cir.)
File Name: 00a0243p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

ROBERT BROOKS,
      *Plaintiff-Appellant,*

    *v.*

CITY OF OAK RIDGE,
      *Defendant-Appellee.*

No. 99-5516

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 98-00099—James H. Jarvis, District Judge.

Argued: March 16, 2000

Decided and Filed: July 21, 2000

Before: NORRIS, MOORE, and COLE, Circuit Judges.

———————

**COUNSEL**

**ARGUED:** J. Mikel Dixon, Knoxville, Tennessee, for Appellant. John C. Duffy, WATSON, HOLLOW & REEVES, Knoxville, Tennessee, for Appellee. **ON BRIEF:** J. Mikel Dixon, Knoxville, Tennessee, for Appellant. John C. Duffy, WATSON, HOLLOW & REEVES, Knoxville, Tennessee, for Appellee.

MOORE, J., delivered the opinion of the court, in which COLE, J., joined. NORRIS, J. (p. 13), delivered a separate opinion concurring in the result.

––––––––––––––

## OPINION

––––––––––––––

KAREN NELSON MOORE, Circuit Judge. Plaintiff-appellant Robert Brooks, a citizen of Oak Ridge, Tennessee, brought suit against the defendant-appellee, the City of Oak Ridge ("Oak Ridge"), alleging that the "Friendship Bell" erected in a public park on the fiftieth anniversary of the city's founding is a Buddhist symbol whose presence results in an endorsement of the Buddhist religion, in violation of the Establishment Clauses of the U.S. and Tennessee Constitutions. U.S. CONST. amend. I; TENN. CONST. art. I, § 3. The district court granted summary judgment to Oak Ridge. Finding no constitutional violation in the city's use of the Friendship Bell, we **AFFIRM**.

## I. BACKGROUND

In order to celebrate the fiftieth anniversary of the City of Oak Ridge, the Oak Ridge Community Foundation ("Foundation"), a private non-profit corporation constituted by Oak Ridge citizens, solicited proposals for a commemorative project and ultimately chose the display at issue in this case. The design for the commemorative "Friendship Bell" was submitted and developed by two Oak Ridge citizens, neither of whom was a Buddhist. Described in the Foundation's brochure as honoring the Oak Ridge citizens who worked on the Manhattan Project during World War II, demonstrating the historical link between Oak Ridge and Japan, and expressing hope for future peace and

friendship among nations,[1] the large, bronze Friendship Bell bears a strong resemblance to the bells that are found in Buddhist temples. Weighing four tons, the bell measures approximately six and one-half feet tall and four and one-half feet in diameter. On the exterior of the bell are 108 knobs and two large panels bearing images associated with Japan and Tennessee, including the official flowers, birds, and trees of each. The surface of the bell is inscribed with the following words: "International Friendship," "Peace," "Pearl Harbor, December 7, 1941, VJ Day, September 2, 1945," and "Hiroshima, August 6, 1945, Nagasaki, August 9, 1945." J.A. at 23 (Postma Aff.), 41-42 (Photographs of Bell). The bell is accompanied by a large wooden striker and by a plaque containing these words:

> FRIENDSHIP BELL
> THIS BRONZE BELL WAS DESIGNED IN OAK RIDGE AND CAST IN JAPAN IN 1993 TO SERVE AS A SYMBOL OF THE BONDS OF FRIENDSHIP AND MUTUAL REGARD THAT HAVE DEVELOPED BETWEEN OAK RIDGE AND JAPAN OVER THE PAST FIFTY YEARS . . . . FRIENDSHIP MADE SO MUCH MORE MEANINGFUL BECAUSE OF THE TERRIBLE CONFLICT OF WORLD WAR II WHICH OAK RIDGE PLAYED SUCH A SIGNIFICANT ROLE IN ENDING. THIS BELL FURTHER SERVES AS A SYMBOL OF OUR MUTUAL LONGING AND PLEDGE TO WORK FOR FREEDOM, WELL-BEING, JUSTICE, AND PEACE FOR ALL THE PEOPLE OF THE WORLD IN THE YEARS TO COME.

The following words appear in a smaller font:

> GIVEN TO THE PEOPLE OF OAK RIDGE ON THE OCCASION OF THEIR 50TH BIRTHDAY BY THE

---

[1]The city of Oak Ridge was created in 1942, when President Roosevelt designated the area where the town now sits as the site of the "Manhattan Project," which resulted in the building of the two atomic bombs that were deployed by the United States in World War II.

OAK RIDGE COMMUNITY FOUNDATION AND
FRIENDS IN THE UNITED STATES, JAPAN, AND
OTHER NATIONS
1996
*OAK RIDGE, TENNESSEE
BORN OF WAR, LIVING FOR PEACE, GROWING
THROUGH SCIENCE*

J.A. at 43 (Photograph of Plaque).

The bell, which was paid for through contributions raised by the Foundation, was cast in Kyoto, Japan and shipped to Oak Ridge. A number of Oak Ridge citizens associated with the bell project traveled to Japan in order to observe the casting ceremony, including city councilman Ed Nephew. In his deposition testimony, Nephew described the ceremony:

> [T]here was a — some kind of a person, a monk, they said, in kind of an orange cape who was chanting all of the time, and at certain points when they thought the metal content had been suitably adjusted, they undertook some ceremonial symbolic gestures of putting in artifacts [such as manuscripts, dogwood twigs, and lotus blooms] into the molten metal.

J.A. at 87 (Nephew Dep.). Nephew also testified that he was told that the ceremony was a cultural tradition that was necessary to impart "soul" to the bell. At one point during the ceremony, he was told to pray to whatever God he wished.[2] Once the bell arrived in Oak Ridge, the Foundation arranged for a University of Tennessee professor and architect to design a pavilion to house it. The pavilion, a triangular structure made of oak wood and covered by a copper roof, incorporates both Eastern and Western architectural styles and

---

[2] Nephew's account of the ceremony was confirmed by Professor Steven Heine, a specialist in East Asian religions who viewed a videotape of the ceremony. Heine also added the opinion that the manuscripts tossed into the metal were prayers.

---

**CONCURRENCE**

---

ALAN E. NORRIS, Circuit Judge, concurring. Although I concur in the result reached by the majority, I write separately to express my view that plaintiff has failed to establish that the Oak Ridge bell is, in fact, a Buddhist religious symbol. The conflicting evidence in the record also supports a conclusion that the bell is a Japanese cultural object, or that any resemblance to a Buddhist bell is not substantial enough to give the Oak Ridge bell itself religious significance. I therefore doubt whether a *Lemon* analysis is even necessary in this situation. In any case, as the majority opinion notes, the Oak Ridge bell passes the *Lemon* test, and therefore does not violate the Establishment Clause even if it were shown to be a religious symbol.

II.A., that Oak Ridge's display of the Friendship Bell does not violate Article I, § 3 of the Tennessee Constitution.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

is described as influenced by the design of renowned architect Frank Lloyd Wright.

The City of Oak Ridge accepted ownership of the bell and pavilion.  The display was permanently installed in the Alvin K. Bissell Park, and a dedication ceremony was held in May 1996, during which a number of Oak Ridge citizens participated in ringing the bell using the special wooden striker.

On February 19, 1998, Robert Brooks filed a complaint in the district court for the Eastern District of Tennessee, alleging that Oak Ridge's acceptance and display of the Friendship Bell violated the Establishment Clause of the U.S. Constitution and Article I, § 3 of the Tennessee Constitution. Oak Ridge moved for summary judgment, and the district court granted the motion, concluding that the Friendship Bell display was constitutional under the test laid out by the Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), and under Tennessee law.  This timely appeal followed.

### II.  ANALYSIS

#### A.  The Federal Constitutional Challenge

We review de novo the district court's grant of summary judgment.  *See Granzeier v. Middleton*, 173 F.3d 568, 572 (6th Cir. 1999).  In evaluating Establishment Clause challenges to governmental actions, we apply the test articulated by the Supreme Court in *Lemon v. Kurtzman*.  In order to pass Establishment Clause muster, a statute or governmental practice must have a secular purpose; its primary effect must be neither to advance nor to inhibit religion; and it must not foster excessive governmental entanglement with religion.  *See Lemon*, 403 U.S. at 612-13. When evaluating the "effects" prong of the *Lemon* test, this court applies the endorsement test, which was embraced by the Supreme Court in *County of Allegheny v. ACLU*, 492 U.S. 573 (1989).  Under the endorsement test, "this [c]ourt considers whether a reasonable observer would conclude that the government endorses religion by allowing the practice in

question." *Hawley v. City of Cleveland*, 24 F.3d 814, 822 (6th Cir. 1994). Thus, the endorsement test is particularly concerned with whether governmental practices create a "symbolic union" of church and state. *Agostini v. Felton*, 521 U.S. 203, 220-23, 227 (1997).

As a threshold matter, however, we must first consider whether the Friendship Bell is a religious symbol at all; if the bell is not actually associated with Buddhism, its display cannot convey the message that the government endorses Buddhism. *See Alvarado v. City of San Jose*, 94 F.3d 1223, 1226-27 (9th Cir. 1996); *Fleischfresser v. Directors of Sch. Dist. 200*, 15 F.3d 680, 687 (7th Cir. 1994). We conclude that, although the bell has secular significance in Japanese culture, it also carries strong Buddhist connotations and therefore qualifies as a religious symbol for the purpose of Establishment Clause analysis.

In order to explicate the religious significance of the bell, Brooks offered the affidavit of Steven Heine, a professor of Religious Studies at Florida International University who specializes in East Asian religions. Heine testified that bells such as the one in this case are used in Buddhist monasteries, not only in Japan but also in India and China, to regulate the lives of Buddhist monks, marking the time for prayer, meals, and other daily activities. Indeed, such bells were at one time required items in all monasteries. Heine also noted that the Friendship Bell's 108 knobs are connected to the traditional Japanese practice of ringing the Buddhist temple bell 108 times on New Year's Eve, to atone for the 108 sins or shortcomings of mankind.[3] Heine also testified that "[t]he

---

[3]Similarly, the *Encyclopedia of Religion* explains:
Another popular Buddhist ritual is the New Year service. . . . At midnight the temple gongs are struck 108 times, signifying the 108 kinds of blind passions . . . that must be purified in the coming year. . . . Although Shintō in origin and nature, [the bell ringing] has become part of the Buddhist tradition, and in the temples it remains the first important ritual of the New Year. The service is held to express gratitude for the past year and to resolve to walk the Buddhist path in the coming year. It includes

significance.[7] Finally, although Brooks hypothesizes that the ordinance regulating the ringing of the bell was a reaction to a perceived danger that the bell would be used for Buddhist purposes, the record indicates that the ordinance instead reflected concerns about noise and about the political controversy over the bell. Therefore, Oak Ridge's display of the bell does not entail impermissible entanglement with religion.

## B. The State Constitutional Challenge

Article I, § 3 of the Tennessee Constitution provides:

That all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience; that no man can of right be compelled to attend, erect, or support any place of worship, or to maintain any minister against his consent; that no human authority can, in any case whatever, control or interfere with the rights of conscience; and that no preference shall ever be given, by law, to any religious establishment or mode of worship.

The Tennessee courts have applied the *Lemon* and endorsement tests to determine whether governmental conduct gives an impermissible preference to religion under Article I, § 3. *See Steele v. Waters*, 527 S.W.2d 72, 73-74 (Tenn. 1975); *Martin v. Beer Bd.*, 908 S.W.2d 941, 951 (Tenn. Ct. App. 1995). Although the Tennessee Constitution guarantees a stronger free exercise right than the federal Constitution, *see Martin*, 908 S.W.2d at 946, Brooks has pointed to no judicial decisions construing the Tennessee Constitution's Article I, § 3 as providing for greater separation of church and state than the federal Establishment Clause. We therefore hold, for the reasons discussed in Part

---

[7]According to at least one witness, a number of Oak Ridge citizens expressed concern that the Friendship Bell improperly represented an "apology" to Japan for the bombing of Hiroshima and Nagasaki.

reasonable observer would determine that the City of Oak Ridge intended to endorse peace and friendship with Japan, not the Buddhist religion, by adopting and displaying the Friendship Bell. Furthermore, the newspaper articles written by private individuals allegedly imputing quasi-religious (but not particularly or uniquely Buddhist) significance to the bell would not, we believe, change the reasonable observer's understanding of whether the government was endorsing Buddhism. We therefore hold that the Friendship Bell display, in context, does not have the effect of endorsing religion.

Similarly, we find no impermissible governmental entanglement with religion. "[T]o assess entanglement, we have looked to 'the character and purpose of the institutions that are benefitted, the nature of the aid that the State provides, and the resulting relationship between the government and religious authority.'" *Coles v. Cleveland Bd. of Educ.*, 171 F.3d 369, 385 (6th Cir. 1999) (quoting *Agostini*, 521 U.S. at 232-33) (alteration in original). Political divisiveness may be some evidence of excessive entanglement, *see Lemon*, 403 U.S. at 622-23, but divisiveness alone, in the absence of administrative entanglement, is not enough to render a practice unconstitutional, *see ACLU v. City of Birmingham*, 791 F.2d 1561, 1565 (6th Cir. 1986), *cert. denied*, 479 U.S. 939 (1986). Brooks points to several factors as demonstrating entanglement: the city's ownership and maintenance of the bell; the alleged controversy in Oak Ridge over the adoption of the Friendship Bell; and the adoption of an ordinance regulating the times during which the bell may be rung. Since the city did not need to interact, nor did it interact, with any religious group as a result of its ownership and maintenance of the bell, the plaintiff cannot demonstrate entanglement on this basis. *See Birmingham*, 791 F.2d at 1565-66 ("Since the city owned the creche and no church or other religious entity was involved in the annual display, there was no evidence of entanglement."). Moreover, there is no evidence that the controversy over the adoption of the Friendship Bell concerned the bell's religious, as opposed to its political,

sound of the bell is a kind of mantra or a chant, which has the kind of sound quality that conveys the unity of the Cosmos, or in this case, the oneness of the Buddha." J.A. at 144 (Heine Aff.). Finally, Heine observed that the bell is strongly associated with Buddhist monasteries, in that the shape of a bell is used to indicate a Buddhist temple on a map, much as crosses indicate Christian churches, and souvenir bells are often sold at or near Buddhist temples.

Additional religious connotations are imputed to the bell by other sources.[4] One author opines, for example, that the deep, vibrating sound of the bell echoes "the peculiar mood of 'emptiness' which is the goal of meditative Buddhist mysticism" and was believed to reach beyond the earthly realm, "even to purgatory where the sound comforted the suffering and kept alive their hope that they, too, might finally travel the path to salvation." DIETRICH SECKEL, BUDDHIST ART OF EAST ASIA 170-71 (Ulrich Mammitzsch trans., 1989). Furthermore, the bell tower's placement in the temple, along with other auxiliary structures, surrounding the temple's main building has been said to symbolize "the communion of saints around the central Buddha." M. ANESAKI, BUDDHIST ART IN ITS RELATION TO BUDDHIST IDEALS 20-21 (1915). Thus, although the Buddhist bells are also cultural artifacts often admired for their artistic quality, *see, e.g.*, H. HACKMANN, BUDDHISM AS A RELIGION: ITS HISTORICAL DEVELOPMENT AND ITS PRESENT CONDITIONS 275-76 (1910), the bells are

---

prayers for good health, success, and long life. 15 THE ENCYCLOPEDIA OF RELIGION 470 (Mircea Eliade ed., 1987).

[4] We note that, although the plaintiff bears the burden of proof in this case, this court need not refer to the parties' evidentiary submissions alone in its Establishment Clause analysis. The Supreme Court has routinely referred to secondary sources in order to determine whether a religious symbol constitutes a governmental endorsement of religion, because this question is not merely one of historical fact, but rather "in large part a legal question to be answered on the basis of judicial interpretation of social facts." *Lynch v. Donnelly*, 465 U.S. 668, 693-94 (1984) (O'Connor, J., concurring); *see also Allegheny*, 492 U.S. at 614 n.60 (Opinion of Blackmun, J.).

clearly tied to the Buddhist religion as ritual implements invested with symbolic significance.[5]  We therefore find it appropriate to apply the *Lemon* test to Oak Ridge's display of the Friendship Bell.

Applying the first prong of the *Lemon* test, we have little difficulty in concluding that Oak Ridge's purpose in adopting the Friendship Bell was secular.  Near the time of the display's installation, Oak Ridge adopted a formal statement of purpose regarding the Friendship Bell.  That statement articulated two reasons for displaying the bell:  first, "[t]o celebrate the past fifty years of growing friendship and peace with Japan," and second, "[t]o express for the future the profound longing and commitment to work for freedom, well-being, justice, and peace for all the people of the world." J.A. at 62 (Friendship Bell Statement of Purpose).  These purposes are echoed in the language of the explanatory plaque that accompanies the bell display.  "Unless it seems to be a sham, . . . the government's assertion of a legitimate secular purpose is entitled to deference." *Chaudhuri v. State of Tennessee*, 130 F.3d 232, 236 (6th Cir. 1997), *cert. denied*, 523 U.S. 1024 (1998).  We have no reason to believe that Oak Ridge's asserted purposes were a sham.  Brooks suggests that the bell was intended in part to symbolize atonement to Japan for Oak Ridge's role in World War II, and that this purpose is tantamount to a religious purpose, because the bombing of Hiroshima has acquired a religious significance for many people.[6]  We decline to read the Establishment Clause so

---

[5]Brooks suggests that the bell is such an important symbol of Buddhism that it is analogous to the crucifix in Christianity.  As our discussion demonstrates, we believe that this assertion is exaggerated.  Rather, it seems that Buddha images would occupy this position of primary importance. *See, e.g.*, HEINRICH DUMOULIN, UNDERSTANDING BUDDHISM 143 (1994); 15 ENCYCLOPEDIA OF RELIGION, *supra*, at 468.

[6]To support his theory, Brooks points to local newspaper articles allegedly expounding, in connection with the Friendship Bell, upon the themes of atonement for, and "sanctification" of, the bombing of Hiroshima.  These articles were extensively discussed in Brooks's materials but were not actually included in the record and are not before

broadly.  We believe that the Establishment Clause regulates governmental conduct involving religion only, and not the official expression of sentiments that may have religious counterparts, such as sorrow and repentance, toward historical events like the bombing of Hiroshima and Nagasaki. *See Alvarado*, 94 F.3d at 1232.

We next consider whether the bell had the impermissible effect of endorsing religion.  In making this determination, "[b]oth the content and the context of the religious display must be analyzed, and, the constitutionality of a display's effect must be judged according to the standard of a **reasonable** observer." *Kunselman v. Western Reserve Local Sch. Dist.*, 70 F.3d 931, 932 (6th Cir. 1995) (emphasis in original).  We hold that the reasonable observer would not understand the Friendship Bell display, in context, to convey the message that the government of Oak Ridge endorses Buddhism.  We believe that the plaque explaining the secular meaning of the display helps to negate any inference of endorsement that might otherwise arise. *See ACLU v. Wilkinson*, 895 F.2d 1098, 1103-04 (6th Cir. 1990).  The primarily secular images and words inscribed on the bell's exterior would have a similar effect.  Furthermore, we assume that the reasonable observer would know about the bell casting ceremony, as well as about the history of the bell's adoption as a celebratory display for Oak Ridge's fiftieth birthday and the city's official statement of secular purpose to commemorate Oak Ridge's historic connection to Japan and to express a desire for international peace and friendship. *See Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 780-81 (1995) (O'Connor, J., concurring in part and concurring in judgment) (taking an expansive view of the reasonable observer's knowledge); *Americans United for Separation of Church & State v. City of Grand Rapids*, 980 F.2d 1538, 1550 & n.7 (6th Cir. 1992) (en banc) (same).  Although the religious aspects of the bell and its casting ceremony remain troubling, on balance we believe that the

---

this court.