**Rabbi Jonathan ADLAND, Reverend Johanna Bos, Reverend James Jerrell Greenlee, Jeff Vessels, and American Civil Liberties Union of Kentucky, Plaintiffs,**

**v.**

**Armond RUSS, In his Official Capacity as Commissioner of Dept. for Facilities Management, Defendant.**

No. Civ.A. 00–51.

United States District Court,
E.D. Kentucky.

July 27, 2000.

David A. Friedman, Amer. Civil Liberties Union of Kentucky, Louisville, KY, Kathleen M. Flynn, Sales, Tillman & Wallbaum, Louisville, KY, C. Laurie Griffith, Griffith Law Offices, Louisville, KY, for Plaintiffs.

Barbara W. Jones, Frankfort, KY, Karen A. Powell, Frankfort, KY, Jennifer L. Cattico, Frankfort, KY, for Defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

On April 21, 2000, Governor Paul E. Patton signed into law Senate Joint Resolution Number 57. Section 8 of this Resolution requires that the Department of Facilities Management "relocate the monument inscribed with the Ten Commandments which was displayed on the Capitol grounds for nearly three decades to a permanent site on the Capitol grounds near Kentucky's floral clock to be made a part of a historical and cultural display which shall include the display of this resolution in order to remind Kentuckians of the Biblical foundations of the laws of the Commonwealth." Senate Joint Resolution No. 57 [Resolution], Section 8.

The plaintiffs seek to permanently enjoin the defendant from complying with the mandate of Section 8 of the Resolution. By agreement of the parties, the matter was heard on the merits, *see* Fed.R.Civ.P. 65(a)(2), on July 25, 2000. After hearing the arguments of counsel, the Court granted the plaintiffs the relief they sought, orally stating its preliminary findings of fact and conclusions of law. This Memorandum Opinion formalizes the same.

## Factual Background

The Resolution itself contains a preamble consisting of seventeen "Whereas" clauses. The clauses recite the legislative purposes in enacting this Resolution. Two of the clauses involve Supreme Court decisions, and employ quotes which, when viewed in isolation, conclude that the Supreme Court has declared the United States to be a "Christian nation." Resolution, preamble. Ten of the clauses quote famous Americans professing their beliefs in the Bible, God, or Christianity. Four other clauses incorporate miscellaneous quotations regarding God or the Bible in pre-Revolutionary legislative sources or in Kentucky law. *See id.* The final clause implies that the text of the Ten Commandments appears in the U.S. Supreme Court chambers as part of a frieze which contains several depictions of historical law givers. *See id.*

The monument referred to in the Resolution, Section 8, is a stone marker that is over six feet tall and almost four feet wide. It was given to the Commonwealth in 1971 by the Fraternal Order of Eagles. In addition to the text of the Ten Commandments, the monument is inscribed with the Star of David, the Chi Rho, the "all-seeing eye" inside a pyramid, an eagle, and a flag. Contrary to the statement contained in the preamble to the Resolution, the monument was displayed on Capitol grounds for less than ten years or until 1980 when it was removed to make room for construction of a chiller plant. It has remained in storage since that time.

Section 8 of the Resolution directs that the monument be relocated to "Capitol grounds near Kentucky's floral clock." The floral clock area is a prominent and central feature on the Capitol grounds. The floral clock can be seen from the circular drive that leads up to the Capitol plaza and the public parking area. In fact, this position is such a focal point for the area that the State has chosen this location for a bronze plaque which welcomes visitors to the State Capitol. The plaintiffs

argue that this dominant position indicates that the State favors and endorses monuments located there.

In addition to the centralized location, the floral clock located in this area attracts attention. The clock is thirty-four feet in diameter and weighs over 200,000 pounds. It is surrounded by seven other smaller memorials that emphasize the State's pride in the citizens, veterans, and public servants to whom said memorials are dedicated. If the "Ten Commandments Monument" were to be relocated to this area of the Capitol grounds, it would be the largest monument in the area, except for the floral clock. Both the floral clock and the "Ten Commandments Monument" would be visible to motorists driving on the road between the Capitol and the Capitol Annex.

Plaintiffs have filed this suit to enjoin the defendant, the Commissioner of the Department for Facilities Management of the Commonwealth, from relocating said monument to the Capitol grounds near the floral clock as directed by Section 8 of the Resolution, arguing that the provision is unconstitutional.

### Issue of Standing

■ Defendant argues that Plaintiffs lack standing to bring this suit. The named plaintiffs include Rabbi Jonathon Adland, Reverend Johanna Bos, Reverend James Greenlee, Reverend Gilbert Schroerlucke, Jeff Vessels, and the American Civil Liberties Union of Kentucky (ACLU). All of the individually named plaintiffs have filed affidavits which indicate that they travel to the State Capitol frequently, and will endure direct and unwelcomed contact with the monument once it is relocated. The ACLU represents 1,800 members across the state who frequently travel to the Capitol and will also come in direct and unwanted contact with the monument if it is relocated near the floral clock.

Defendant argues that these Plaintiffs do not have standing as they will "not come into direct contact with the monument so as to be offended or form any other opinion regarding its message." Response at 13. The Sixth Circuit has held that anyone visiting a facility in which a religious object is unconstitutionally displayed, has standing to file suit as said person has suffered an actual injury. *See Washegesic v. Bloomingdale Public Schools*, 33 F.3d 679, 683 (6th Cir.1994) (holding that a student who had graduated still had standing to sue his former school as he could possibly return to site for social events). Thus, the plaintiffs have the requisite standing to pursue this action.

### Constitutionality of Section 8 of The Resolution

■ The constitutionality of Section 8 is to be judged under the standards set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). In other words, the challenged section must "have a secular legislative purpose". *Id.* at 612, 91 S.Ct. 2105. In addition, "its principal or primary effect must be one that neither advances nor inhibits religion". *Id.* Finally, the Resolution "must not foster an excessive government entanglement with religion." *Id.* at 613, 91 S.Ct. 2105. All three prongs of the *Lemon* test must be satisfied if Section 8 is to pass constitutional muster.

### Secular Legislative Purpose

The General Assembly directed the placement of the monument on Capitol grounds to "remind Kentuckians of the Biblical foundations of the law of this Commonwealth." Resolution, Section 8. My sister jurist, United States District Judge Jennifer Coffman, recently analyzed the possible existence of a secular purpose in the posting of the Ten Commandments.

In its original form, the Ten Commandments display,

> consisting only of the Commandments unaccompanied by any other documents, lacks any secular purpose. The Ten Commandments are a distinctly reli-

gious document, believed by many Christians and Jews to be the direct and revealed word of God, and their very nature precludes a finding of a prevailing secular purpose here. Indeed, 'the pre-eminent purpose for posting the Ten Commandments ... is plainly religious in nature.'

*American Civil Liberties Union v. Pulaski County, Kentucky,* 96 F.Supp.2d 691, 698 (E.D.Ky.2000), quoting *Stone v. Graham,* 449 U.S. 39, 41, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980).

This display is unaccompanied by any other historical documents evidencing the myriad of influences that shaped our current body of law. Therefore, Section 8 of the Resolution fails this prong of the *Lemon* test [1] as it does not contain a secular purpose.

### Primary Effect Advances Christianity

The second prong of *Lemon* has undergone a metamorphosis since that decision was rendered in 1971. *See generally Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105 (1971). In recent decisions, the Supreme Court has applied the "endorsement" test when testing the constitutionality of an action under the Establishment Clause. *Lynch v. Donnelly,* 465 U.S. 668, 681–83, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984). The Sixth Circuit has found that "the endorsement test prohibits speech that a reasonable observer would think is an endorsement of religion by the government." *Granzeier v. Middleton,* 173 F.3d 568, 573 (6th Cir.1999). This test has been treated as a "refinement or clarification of the *Lemon* test." *Id.*

In the case at bar, a reasonable observer would interpret this display as the Commonwealth's endorsement of Christianity. Although the defendant cites case law which indicates that monuments such as the one in question meet the qualifications of this prong of the test, said cases are simply inapposite *sub judice*[2]. Many factors influence the conclusion that this display virtually endorses Christianity.

First, the presentation of the monument containing the Ten Commandments, and the language of the Resolution detailing the various historical references to Christianity's influence on the Commonwealth leaves the viewer with a single impression: The Commonwealth of Kentucky believes that Christianity was the major motivating force behind the Commonwealth's current body of law.

---

1. The Resolution requires that said same be included along with the display of the monument. The Resolution was to be part of the memorial in order to create an "historical and cultural display." Senate Joint Resolution No. 57, Section 8. However, the inclusion of the Resolution tends to create an exclusive display, rather than an "historical and cultural" perspective of the history of our laws. The entire preamble to the Resolution cites only Christian sources of law. By including the Resolution in the display, viewers will tend to leave with the impression that the Commonwealth of Kentucky endorses the opinion that Christianity is the central foundation of our law. The Resolution extolls the virtues of the Christian beliefs promulgated by the Bible. By including a copy of the Resolution along with the display of the monument, the legislation's religious intent is so clearly evident that the Resolution is unable to pass muster under the first prong of *Lemon.* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

2. The cases cited by the defendant all involve monuments placed permanently in longstanding displays on governmental property. While the costs involved in removing those monuments were not considered in the cited opinions, this Court finds that the costs to be borne by the Commonwealth when relocating this monument impact the "entanglement" consideration under the *Lemon* test. *See infra section.*

   In addition, most of the cases cited did not document the legislature's intent when the monument was originally placed. In *Colorado v. Freedom From Religion Foundation, Inc.,* 898 P.2d 1013, 1024 (Co.1995), the court specifically notes that "the record contains no direct evidence of the State's purpose in accepting the monument .... [in fact] the State has no record of how the monument came to be in Lincoln Park." The case at bar is distinctly different. In fact, it is the very intent of the legislature that is most influential in the decision in this case.

This presentation shows Christianity's influence on the law to the exclusion of all other influences. The display anticipated in the Resolution would not make reference to the influences of the Magna Charta, English common law, or even the ancient Code of Hammurabi. These sources, as well as countless others, have served to mold our current system of law. However, the Resolution does not acknowledge any of these sources. Rather, it acknowledges the influence of Christianity to the exclusion of all else. No reasonable person could view this display without being left with the impression that the Commonwealth endorsed the idea that Christianity's influence on the law outranked all other historical influences.

This Resolution, created by the General Assembly and signed into law by the Governor, extolls the virtues of Biblical guidance. Although the Resolution may contain true and honest quotations of statements by famous Americans, the declaration that "[t]he General Assembly finds the Ten Commandments to be the precedent legal code of the Commonwealth ...," endorses Christian influences to the exclusion of those from other religious and secular sources. Resolution, Section 7.

Second, the prominent placement of the monument would further support the reasonable person's conclusion that the Commonwealth endorsed Christian values. This high traffic area is located near a famous Kentucky landmark. Even the defendant acknowledges that Kentucky's floral clock is "one of the world's largest." Response at 11. It is with great pride that the Commonwealth displays this clock on Capitol grounds, in the direct proximity of the bronze plaque that welcomes visitors to the State Capitol. The monument's placement would indicate that the Commonwealth approved of the display and the full panoply of its religious content.

Finally, the size of this monument further indicates the importance placed on the Biblical message contained in this display. While the floral clock is clearly larger and probably more eye catching than the monument in question, the monument would not be viewed as simply another object in a "monument garden." The facts clearly indicate that the sheer dimensions of this granite monolith would dwarf all the other memorials to deceased veterans and dedicated public servants in the vicinity.

A reasonable observer to viewing this display would only conclude that the Commonwealth endorsed the Biblical passage quoted on the monument, as well as the inspiring statements contained in the Resolution. The Court has considered the entirety of the presentation and concludes that the lack of historical context, location, and size of the monument create an impression that the Commonwealth endorses Christianity[3]. Therefore, Section 8 of the Resolution cannot meet the requirements of the second prong of the *Lemon* test.

### Excessive Government Entanglement with Religion

In order to "assess entanglement, we have looked to the character and purpose of the institutions that are benefitted, the nature of the aid that the State provides, and the resulting relationship between the government and religious authority." *Coles Ex. Rel. Coles v. Cleveland Board of Education,* 171 F.3d 369, 385 (6th Cir.

3. As the plaintiffs conceded during oral argument, many alternatives exist which might allow the state to place this monument on state property without violating the Constitution. The Court cannot speak to the merits of alternatives suggested by the plaintiffs, but the argument referenced a number of options, including:

—the creation of a free speech area on the Capitol grounds in which citizens would be able to express their differing views though a system of rotating exhibits, or a lottery structure;

—the display of the monument in a less prominent location, with the cost of upkeep and relocation paid out of private funds;

—the creation of an historical display that showcases the various influences on our law, including secular and religious sources.

1999) (internal citations omitted). The sum of all these elements can best be encapsulated in the notion that, "[i]ts display entangles the government with religion." *Washegesic,* 33 F.3d at 683.

The Commonwealth's mere "ownership and display" of the monument "endorses the Christian religion and promotes it exclusively." *Id.* at 684. The monument's presence at the focal point of the Capitol grounds, the accompanying Resolution that extols the benefits of Biblical guidance, and the implied endorsement of the Christian religion only begin the list of entanglements created by this Resolution.

The Commonwealth will bear certain costs in the relocation of this monument. First, the initial costs incurred by the Commonwealth in moving the monument from its current place in storage to the floral clock will be substantial. The monument is solid granite and is over six feet tall and almost four feet wide necessitating the construction of a substantial foundation before it is set in place. In addition, Defendant conceded during oral argument that a sidewalk will have to be specially constructed to allow for full viewing of the monument. The Commonwealth will also provide for the upkeep of the monument. These costs cannot be ignored. Thus, the Resolution fails to satisfy the third prong of the *Lemon* test.

## Conclusion

Under the Establishment Clause, the Constitution mandates that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. The First Amendment was made binding upon the states by the Fourteenth Amendment. *See Capitol Square Review and Advisory Board v. Pinette,* 515 U.S. 753, 757, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995). The Commonwealth cannot favor one religion without disfavoring another. One belief system cannot be supported and extolled without prejudicing another.

To those who act or argue against this principle of equal liberty of conscience on grounds that their duty is to use the state in support of their particular beliefs, we answer that we cannot expect others to accept an inferior liberty. To those who say that the principle of equal liberty of conscience has the effect of rejecting the absolute nature of their religious beliefs, we reply that if any principle can be agreed to, it can only be that of an equal liberty of conscience for all.

*Stein v. Plainwell Community Schools,* 822 F.2d 1406, 1408 (6th Cir.1987).

To put it in other words, the function of our Constitution is to insure that the majority protects the views of the minority; the majority cannot by legislative fiat impose its views on the minority.

Accordingly,

**IT IS ORDERED AND ADJUDGED** herein as follows:

(1) That Senate Joint Resolution No. 57, Section 8, be, and the same hereby is, **DECLARED** to be **UNCONSTITUTIONAL;**

(2) That the defendant and his successors in office be, and they hereby are, **PERMANENTLY ENJOINED** from relocating the "Ten Commandments Monument" to the location on the Capitol grounds near the floral clock.