AMERICAN CIVIL LIBERTIES UNION OF TENNESSEE; Thomas E. Bibler and Nancy A. Bibler; Josef A. Davidson; C. Brad Guagnini; Roland Johnson, Jr.; William David Jones; Tracy Knauss and Donna Knauss; John W. Mingus, Sr.; Philip M. Posner; Robert H. Siskin and Priscilla Siskin; and Melanie Morel Sullivan, Plaintiffs,

v.

HAMILTON COUNTY, TENNESSEE; the County Commission of Hamilton County and Fred R. Skillern, Richard Casavant, Charlotte E. Vandergriff, William R. Cotton, Jr., Joanne H. Favors, Ben F. Miller, Jr., Harold R. Coker, Curtis D. Adams, and Bill Hullander, in their official capacities as County Commissioners of Hamilton County, Tennessee, Defendants.

No. 1:02–CV–026.

United States District Court,
E.D. Tennessee,
at Chattanooga.

May 3, 2002.

Hubert E. Hamilton, III, Chattanooga, TN, Susan L. Kay, Aclu of Tennessee, Nashville, TN, for Plaintiffs.

Rheubin M. Taylor, Hamilton County Attorney, Chattanooga, TN, R. Wayne Peters and Sam Elliott, Chattanooga, TN, for Defendants.

## *MEMORANDUM OPINION*

EDGAR, Chief Judge.

### I.

### *Background*

On September 19, 2001, the Hamilton County, Tennessee, County Commission (herein sometimes called the "Commission") voted, with one recorded dissent, that a copy of the Ten Commandments be "prominently displayed in the Hamilton County Courthouse, the Hamilton County City Courts Building, and the Juvenile Courts." On December 18, 2001, plaques containing the Ten Commandments were posted in all three buildings. The plaques differ slightly in size and color. However each plaque contains the following rendering of the Ten Commandments:

# THE

# TEN COMMANDMENTS

| | |
|---|---|
| I | Thou shalt have no other gods before me |
| II | Thou shalt not make unto thee any graven image |
| III | Thou shalt not take the name of the Lord thy God in vain |
| IV | Remember the sabbath day to keep it holy |
| V | Honor thy father and thy mother |
| VI | Thou shalt not kill |
| VII | Thou shalt not commit adultery |
| VIII | Thou shalt not steal |
| IX | Thou shalt not bear false witness |
| X | Thou shalt not covet |

EXODUS 20

This text is derived from the King James Version of the Bible, but was edited by the Hamilton County Attorney in consultation with the County's architect.

The plaque in the Hamilton County Courthouse is displayed in the foyer of the former main entrance, which was closed by the County for security reasons prior to December 18, 2001. While the entrance is closed, the area is fully accessible from the inside of the building. This plaque hangs on the wall alone. On an opposite wall hangs a photograph of a prior courthouse, a dedicatory plaque bearing the names of local officials, and a plaque inscribed with the Gettysburg Address. On an adjoining wall is a plaque honoring the father of a former County Executive. The plaques in the other buildings hang alone in the lobbies and are clearly visible from the main entrances to those buildings.

The plaintiffs are the American Civil Liberties Union of Tennessee ("A.C.L.U.") and a number of Hamilton County citizens. They bring this suit against Hamilton County and the members of the Hamilton County Commission in their official capacity for declaratory and injunctive relief under 42 U.S.C. § 1983. Plaintiffs also seek to recover attorney fees under 42 U.S.C. § 1988, as well as court costs. They seek a determination that the defendants have violated their rights under the Establishment Clause of the First Amendment to the United States Constitution. This case came before the Court on April 29, 2002, for a bench trial. For the reasons set forth in this memorandum opinion, judgment will be entered for some of the plaintiffs.

## II.

### *Standing*

Plaintiff Tracy Knauss visits the Hamilton County Courthouse each year to personally pay his property taxes. His last visit for this purpose was February 28, 2002. On that date the Ten Commandments hung on a wall very near the location where such taxes are paid. Plaintiff Rabbi Philip M. Posner encountered the Ten Commandments while in the Hamilton County Courthouse as a participant in legal proceedings. He is an A.C.L.U. member. Plaintiff Knauss is engaged in ongoing litigation in the Hamilton County City Courts Building. He walks past the Ten Commandments as he enters the building.

Some of the other plaintiffs have, and will continue to do such business in the Hamilton County Courthouse as the purchasing of automobile license tags. The clergy plaintiffs visit the courthouses with their parishioners and congregation members as required. One plaintiff, Thomas Bibler, a college professor, occasionally visits the Hamilton County Courthouse and the Hamilton County City Courts Building with his students. However, other than plaintiffs Knauss and Posner, there is no evidence that any of the other individual plaintiffs have endured unwelcome contact with the Ten Commandment displays while conducting normal activities in Hamilton County courthouses.

In a public facility case such as this, individual plaintiffs have standing if they use the facility and suffer "actual injury." *Washegesic v. Bloomingdale Pub. Sch.,* 33 F.3d 679, 682 (6th Cir.1994). Unwelcome direct contact with the Ten Commandments plaques gives rise to sufficient injury to create standing for individuals, and thereby a "case or controversy" under Article III of the Constitution of the United States. *Id.* at 682–83. Plaintiffs Knauss and Posner have suffered unwelcome direct contact with the Ten Commandments display in the Hamilton County Courthouse. Therefore, each of them has standing to challenge the posting in that courthouse. Plaintiff Knauss has con-

fronted the display in the Hamilton County City Courts building. He has standing to challenge the display in that building. However, since there is nothing in this record to indicate that these, or any of the named plaintiffs, has confronted the plaque in the Juvenile Courts Building (except on a special trip to see and photograph the Ten Commandments plaque), they do not have standing to challenge the posting of the Ten Commandments in that building.

■■■■ The A.C.L.U. has 131 members in Hamilton County. Some of those members are the individual plaintiffs in this suit. The A.C.L.U. has standing as an organization to address the Ten Commandments display in the Hamilton County Courthouse because one of its members, Rabbi Posner, has standing to sue in his own right; the specific interest (in this case the protection of constitutional rights) which the A.C.L.U. seeks to protect is germane to its purpose; and neither the legal claim asserted nor the relief sought requires the participation of the A.C.L.U.'s individual members. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 342–43, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Mixon v. Ohio,* 193 F.3d 389, 393 n. 1 (6th Cir.1999). However, since there is no evidence that any A.C.L.U. members have standing with respect to the plaques in the Hamilton County City Courts Building and the Juvenile Courts Building, the A.C.L.U. lacks standing to challenge the posted plaques in those buildings. In sum, plaintiffs Knauss, Posner and the A.C.L.U. collectively have standing to challenge the Ten Commandments displays in the Hamilton County Courthouse, and the Hamilton County City Courts Building, but not the Juvenile Courts Building.

## III.

### *Establishment Clause*

The First Amendment to the United States Constitution declares, in part, that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." These limitations on the legislative power of Congress are applied to states and their political subdivisions by the Fourteenth Amendment. *Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 301, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000); *Everson v. Bd. of Educ.,* 330 U.S. 1, 13–14, 67 S.Ct. 504, 91 L.Ed. 711 (1947). The issue presented here is whether Hamilton County and its governing body have violated the Establishment Clause by prominently posting the Ten Commandments in county courthouses.

This Court has recently observed that the Supreme Court has used various analytical approaches to draw the line between government and religion. *Doe v. Porter,* 188 F.Supp.2d 904, 909 (E.D.Tenn. 2002). One of those approaches is that set forth in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), wherein it was held that government action, to comply with the Establishment Clause, must (1) have a secular purpose; (2) have the primary effect of neither advancing nor inhibiting religion; and (3) not foster an excessive governmental entanglement with religion. *Id.* at 612–613, 91 S.Ct. 2105. This is the *"Lemon* test." While several Justices of the Supreme Court have been critical of this test, the Court has not rejected it, and it continues to be used by lower courts in deciding Establishment Clause disputes. *See, e.g., American Civil Liberties Union v. Capitol Square Review & Advisory Bd.,* 243 F.3d 289, 305–308 (6th Cir.2001); *Coles v. Cleveland Bd. of Educ.,* 171 F.3d 369, 383–85 (6th Cir.1999); *Washegesic v. Blooming-*

dale Pub. Sch., 33 F.3d 679, 683 (6th Cir. 1994); Books v. City of Elkhart, 235 F.3d 292, 301 (7th Cir.2000), cert. denied, 532 U.S. 1058, 121 S.Ct. 2209, 149 L.Ed.2d 1036 (2001).

In recent public display cases, the Supreme Court has found it useful to formulate an "endorsement" test, which appears to be a refinement of the Lemon test. Under this formulation, governmental action runs afoul of the Establishment Clause if it has either the "purpose or effect of 'endorsing' religion . . . ." County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 592, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). Endorsement occurs when government conveys or attempts "to convey a message that a religion or a particular religious belief is favored or preferred." Id. at 593, 109 S.Ct. 3086 (citing Wallace v. Jaffree, 472 U.S. 38, 70, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (O'Connor, J., concurring)). The purpose and effect of governmental action are relevant inquiries under both the Lemon test and the "endorsement" test.

### Purpose

In determining purpose, we look to whether the government subjectively intended to convey a message of endorsement or disapproval of religion. Lynch v. Donnelly, 465 U.S. 668, 690, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring). If the Hamilton County Commission had a secular purpose in posting the Ten Commandments, its action cannot survive this First Amendment challenge if that purpose was dominated by a religious purpose. Id. at 690–91, 104 S.Ct. 1355. It is not enough for the defendants to merely say that they had a secular purpose. The Commission's action cannot stand if its real purpose was religious. In other words, the Commission's asserted secular purpose must not be a sham. American Civil Liberties Union v. Capitol Square Review & Advisory Bd., 243 F.3d 289, 307 (6th Cir.2001); Brooks v. City of Oak Ridge, 222 F.3d 259, 265 (6th Cir. 2000).

In determining the purpose of the posting, one need look no further than the text of the posted plaques. The text of the plaques comes directly from the Bible, a religious document. The plaques make this very clear by citing Exodus 20 as their source. The Bible's text in Exodus 20, as well as that in Deuteronomy 5, says that these commandments come straight from God. The Supreme Court has said:

> The Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths, and no legislative recitation of a supposed secular purpose can blind us to that fact. The Commandments do not confine themselves to arguably secular matters, such as honoring one's parents, killing or murder, adultery, stealing, false witness, and covetousness. See Exodus 20:12–17; Deuteronomy 5:16–21. Rather, the first part of the Commandments concerns the religious duties of believers; worshipping the Lord God alone, avoiding idolatry, not using the Lord's name in vain, and observing the Sabbath Day. See Exodus 20:1–11; Deuteronomy 5:6–15.

Stone v. Graham, 449 U.S. 39, 41–42, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980).

In this case there is evidence of the Commission's religious purpose beyond the text of the plaques. The first "Whereas" in the resolution directing posting of the Ten Commandments states:

> WHEREAS, our nation recognizes that all laws governing man's actions toward his fellowman [sic] are derived by the Ten Commandments as given by God to Moses . . . .

The Commission evidently believed that all laws come from the Ten Commandments, and that this is recognized by our nation. While the Commission may hold this view,

there are some in our nation who might cite other sources of law such as the ancient Code of Hammurabi, the Magna Carta, or English common law. *See Adland v. Russ*, 107 F.Supp.2d 782, 786 (E.D.Ky. 2000). At least one scholar has concluded that "[t]he historical record fails to support claims of a direct relationship between the law and the Ten Commandments." Steven K. Green, *The Fount of Everything Just and Right? The Ten Commandments as a Source of American Law*, 14 J.L. & Religion 525, 558 (1999–2000). Whatever the Commission's motivation in adopting this resolution may have been, it is clear that it started from a distinctly religious premise.

■ On October 9, 2000, after the posting resolution had passed, its prime sponsor, Bill Hullander, wrote a personal letter to some, but not all, local clergy [1] in which he generally urged that they promote putting up copies of the Ten Commandments in churches and homes. In this letter, Mr. Hullander expressed his Christian motivation to have copies of "God's law posted all over our county." The letterhead lists Mr. Hullander's personal address, but he signed the letter as "Chairman, Hamilton County Commission." While Mr. Hullander's letter was written after the Commission approved the Ten Commandments resolution, it nevertheless clearly demonstrates that his motivation, as the resolution's primary sponsor, was a religious one.

Defendants assert that they had a secular purpose. In their trial brief they say their purpose was to "foster obeying the law in the wake of the September 11 tragedy." (Defendants' Trial Brief, p. 27–28). The second "Whereas" clause of the adopting resolution elaborates on this theme:

> WHEREAS, the county legislative body feels that the obtaining and promi-

nent placing of a copy of the Ten Commandments in the Hamilton County Courthouse, the Hamilton County City Courts Building, and the Juvenile Courts would be a meaningful and informative step toward helping the citizens of the County to understand the importance of obeying the laws of this land;

However, the defendants have pointed to no evidence that the events of September 11, 2001, gave rise to any epidemic of lawbreaking in Hamilton County. The rationale that the posting of the Ten Commandments on courthouse walls would somehow remind citizens that they should obey the laws of the land is, at best, unconvincing. Any secular purpose the Commission may have had is difficult to discern. If it had a secular purpose, that purpose was overborne by a religious one. Mr. Hullander's letter, taken together with the text of the plaques, makes it clear that the Commission acted with the purpose to induce viewers of the plaques to venerate and obey the Ten Commandments. As the Supreme Court said in *Stone v. Graham*, this "is not a permissible state objective under the Establishment Clause." 449 U.S. at 42, 101 S.Ct. 192.

### Effect

To determine the effect of the Commission's action, the Court must make an objective determination about whether a reasonable observer would conclude that the plaques endorse a religious message or belief. *County of Allegheny*, 492 U.S. at 597, 109 S.Ct. 3086; *Granzeier v. Middleton*, 173 F.3d 568, 573 (6th Cir.1999).

One can imagine a depiction of the Ten Commandments as a part of an artistic or historical display such as the one decorating the United States Supreme Court

---

1. No such letter was sent to plaintiff Rabbi Philip Posner, who leads Chattanooga's Mizpah Congregation.

Building. There, Moses is shown holding tablets containing Hebrew lettering, and standing with other historical, legal figures. There are doubtless other ways to portray the secular nature of the Decalogue. Nothing like this appears in the Hamilton County Courthouses.

■ Defendants contend that reasonable persons viewing these plaques would know that the Ten Commandments were not there for a religious purpose, but that they have played a role in the secular development of western law and culture. It may be true that the Ten Commandments have played such a secular role. However, the way that these plaques have been posted would not bring that to mind. Each plaque is posted separately and apart from any other wall adornments. They are clearly labeled as being the "Ten Commandments." They display the full (albeit edited) text of those Commandments, and if anyone doubts that they have religious significance, the Commandments are framed in the shape of what one would recognize as a stone tablet, and the plaques reference the Bible. The Hamilton County display has the effect, to a reasonable observer, of conveying a religious message.

## IV.

### *Conclusion*

Most cases decided in the last decade have found Ten Commandments postings to be unconstitutional. *See Books v. City of Elkhart,* 235 F.3d 292 (7th Cir.2000); *cert. denied, City of Elkhart v. Books,* 532 U.S. 1058, 121 S.Ct. 2209, 149 L.Ed.2d 1036 (2001) (municipal building's monument containing Ten Commandments held unconstitutional); *Indiana Civil Liberties Union v. O'Bannon,* 259 F.3d 766 (7th Cir.2001) (preliminary injunction against Ten Commandments monument erected on grounds of Indiana Statehouse); *Freethought Soc'y v. Chester County,* 191 F.Supp.2d 589 (E.D.Pa.2002) (Ten Commandments plaque on courthouse exterior found unconstitutional), *modified,* 194 F.Supp.2d 437 (E.D.Pa.2002) (injunction modified in part); *ACLU Nebraska Found. v. City of Plattsmouth,* 186 F.Supp.2d 1024 (D.Neb.2002) (park monument containing Ten Commandments unconstitutional); *American Civil Liberties Union v. McCreary County,* 145 F.Supp.2d 845 (E.D.Ky.2001) (supplemental injunction barring display of Ten Commandments in courthouses and schools); *Kimbley v. Lawrence County,* 119 F.Supp.2d 856 (S.D.Ind.2000) (preliminary injunction against courthouse lawn monument containing Ten Commandments); *Adland v. Russ,* 107 F.Supp.2d 782 (E.D.Ky.2000) (monument containing Ten Commandments on grounds of state capitol unconstitutional); *Harvey v. Cobb County,* 811 F.Supp. 669 (N.D.Ga.1993) (county courthouse display of Ten Commandments unconstitutional). Although not legal precedent, Tennessee's Attorney General has issued an opinion concluding that a county legislative body's adoption of a resolution requiring the posting of copies of the Ten Commandments in public buildings and/or courtrooms is unconstitutional. Op. Tenn. Att'y Gen. No. 02–039 (April 3, 2002).

Establishment Clause cases often turn on specific facts. The handful of cases in which courts have permitted a government's display of the Ten Commandments are readily distinguishable from the present case. The Ten Commandments displays in *Summum v. City of Ogden,* 152 F.Supp.2d 1286 (D.Utah 2001), *Suhre v. Haywood County,* 55 F.Supp.2d 384 (W.D.N.C.1999), and *State v. Freedom From Religion Found., Inc.,* 898 P.2d 1013 (Colo.1995), each included the Ten Commandments as a single aspect of a multifaceted display. The courts in those cases focused on the displays' additional, secular symbols in finding them constitutionally

permissible. That reasoning is not applicable to the present case.

Additionally, in *Summum v. Ogden,* the court felt compelled to follow the precedent established by *Anderson v. Salt Lake City Corp.,* 475 F.2d 29 (10th Cir.1973), in which the Tenth Circuit permitted a similar monument to stand. However, the *Summum* Court acknowledged, without deciding, that *Anderson* might not be good authority after the Supreme Court's decision in *Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980). *See Summum,* 152 F.Supp.2d at 1294. This Court need not address that concern, as the cases permitting Ten Commandments displays are clearly distinguishable from the one at bar.

The Supreme Court held in *Stone v. Graham* that a state statute requiring the posting of the Ten Commandments in public school classrooms is violative of the Establishment Clause. While there are special reasons for limiting governmental religious activity in schools, *Edwards v. Aguillard,* 482 U.S. 578, 583–84, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987); *Coles v. Cleveland Bd. of Educ.,* 171 F.3d 369, 377 (6th Cir.1999), there are also good reasons for restrictions on government religious displays in public buildings, especially those which are the seat of county government. *County of Allegheny v. American Civil Liberties Union,* 492 U.S. 573, 599–600, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). No viewer of the Ten Commandments in any one of the courthouses of Hamilton County, Tennessee "could reasonably think that it occupies this location without the support and approval of the [local] government." *Id.* at 599–600, 109 S.Ct. 3086. Furthermore, courthouses by definition house courts. Courts are places where there must be equality and justice, and where persons of all religious or non-religious persuasions in this diverse nation of ours must have confidence that they are getting fair treatment. This is reason enough for the government to refrain from giving the appearance that courthouses are only for those who adhere to the Ten Commandments.

In many parts of the world there is no separation of religion and government. The Founders of this country made a conscious decision to make that separation. This separation, while not always easy to chart, has served us well. Experience tells us that there is perhaps nothing more divisive than the interjection of religion into our government. The controversy engendered by this Commission action is proof of this.

The separation of Church and State, government and religion, does not mean that this nation is any less religious. We may, if we wish, read and heed the precepts of the Ten Commandments. However, we do not need the aid of the government to do so. The Constitution of the United States prohibits the Hamilton County Commission from using public buildings, which belong to all of us, to promote and endorse religious beliefs. By posting plaques of the Ten Commandments in the Hamilton County courthouses, the Commission has acted with both the purpose and effect of endorsing religion.

Judgment will enter for plaintiffs A.C.L.U., Tracy Knauss, and Phillip M. Posner ordering defendants to remove the Ten Commandment displays in the Hamilton County Courthouse and the Hamilton County City Courts Building. The claims of the remaining plaintiffs must be dismissed for lack of standing. Because no plaintiff has standing to challenge the Ten Commandments display in the Juvenile Courts Building, the judgment entered in this case will have no application to that building.

## *JUDGMENT*

For the reasons set forth in the memorandum opinion filed herewith, **JUDGMENT** is hereby **ENTERED** declaring that Hamilton County's displays of the Ten Commandments at the Hamilton County Courthouse and the Hamilton County City Courts Building violate plaintiffs' rights under the Establishment Clause of the First Amendment to the United States Constitution as made applicable to the States through the Fourteenth Amendment to the United States Constitution.

Defendants are **ORDERED** to remove the Ten Commandments displays in the Hamilton County Courthouse and the Hamilton County City Courts Building. Since plaintiffs in this case do not have standing to challenge the Ten Commandments posting in the Hamilton County Juvenile Court Building, this Court is without authority at this time to order the removal of that particular display.

The claims of Thomas E. Bibler, Nancy A. Bibler, Josef A. Davidson, C. Brad Guagnini, Roland Johnson, Jr., William David Jones, Donna Knauss, John W. Mingus, Sr., Robert H. Siskin, Priscilla Siskin, and Melanie Morel Sullivan, are **DISMISSED** for lack of standing.

The remaining plaintiffs, American Civil Liberties Union of Tennessee, Tracy Knauss, and Philip M. Posner are **AWARDED** their reasonable attorney fees under 42 U.S.C. § 1988, and their costs of action pursuant to 28 U.S.C. § 1920. These plaintiffs shall file their bill of costs and any supporting documentation for attorney fees within thirty (30) days from the entry of this judgment.