**UNITED STATES of America, et al., Plaintiffs–Appellees,**

v.

**Stan D. OWENS, Van Wert County Sheriff, Defendant,**

**John G. Spirko, Jr., Defendant–Appellant.**

No. 94–3431.

United States Court of Appeals, Sixth Circuit.

Argued April 3, 1995.

Decided May 17, 1995.

Edward R. Cohen (argued and briefed) and Leonard Schaitman, Dept. of Justice,

Appellate Staff, Civ. Div., Washington, DC, for plaintiffs-appellees.

Dale A. Baich (argued and briefed), Richard J. Vickers, Public Defender's Office, Ohio Public Defender Com'n, Columbus, OH, and Alan M. Freedman, Freedman & Bornstein, Chicago, IL, for defendant-appellant.

Before: MERRITT, Chief Judge; SILER, Circuit Judge; EDMUNDS, District Judge.*

MERRITT, Chief Judge.

This case involves an appeal of an injunction issued by the district court that prohibits the execution of an Ohio state court order issued under the Ohio Public Records Act. The Ohio order would require the release of investigative documents to the defendant Spirko that were compiled by a joint state-federal task force that investigated the murder for which he was eventually convicted and sentenced to death. The United States Postal Service, which was not a party to the Ohio state case, sought and received a preliminary and then a permanent injunction from a federal district court in order to allow it to process the documents under the Freedom of Information Act. The defendant raises three issues on appeal, an abstention issue, a judicial estoppel issue and a notice issue. He does not otherwise appeal the merits of the district court's decision. We now vacate the permanent injunction and remand the case to the district court for additional factual findings.

## I. FACTS

In 1982, Betty Mottinger, the postmaster of Elgin, Ohio, was murdered. A joint task force comprised of federal and local law enforcement authorities was assembled to investigate the crime. The Office of the Postal Inspector, the F.B.I., state police and local police participated in the investigation. In the process of conducting the investigation, the joint task force kept records, which are now the subject of this case. During the direct appeal of his murder conviction, Spirko's attorney sought access to the records assembled by the joint task force which have been kept in filing cabinets owned by the Postal Service in a jail cell in the Van Wert County Sheriff's Office. Only the Postal Service has keys to the locked filing cabinets. During the original trial the records were reviewed for discovery purposes by an independent third-party attorney and some documents were released to Spirko.

Nonetheless, in 1987 Spirko filed a Freedom of Information Act claim against the Postal Service seeking a writ of mandamus from a federal district court allowing him access to all the records. By agreement of the parties, a magistrate heard the case. The Postal Service presented several alternative arguments as to why the Freedom of Information Act did not apply to these documents. The magistrate concluded that the Freedom of Information Act did not apply to these records because the records fell into an exemption to the Freedom of Information Act and granted summary judgment for the Postal Service.

Instead of appealing this decision, Spirko filed an action in the Ohio courts under O.R.C. § 149.43 (Availability of Public Records) against the Van Wert County sheriff. In this action the Ohio Court of Appeals (which had original jurisdiction) held that the Ohio statute did apply to the investigatory records and issued a writ of mandamus requiring that they be released in their entirety to Spirko. Following this 1992 decision, the Postal Service moved to intervene in the case, but its motion was denied. The sheriff initially appealed the decision of the Ohio Court of Appeals to the Ohio Supreme Court, but then failed to file any briefs. Consequently the appeal was dismissed for want of prosecution. The Postal Service did not appeal the denial of its motion to intervene.

The Postal Service then filed suit in federal district court to enjoin the execution of the writ of mandamus issued by the Ohio court. The Postal Service now claimed that the Freedom of Information Act did apply to these records. Furthermore, since the Ohio

---

* The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michi-      gan, sitting by designation.

statute would permit disclosure of some records that might be exempt from release under the Freedom of Information Act, the Postal Service claimed it would be irreparably harmed if the records were released under the Ohio court's order. In the interim, Spirko filed a second Freedom of Information request which is currently pending. In 1993, the district court agreed with the Postal Service and granted a preliminary injunction barring release of the documents under the Ohio statute. It held that Spirko's second Freedom of Information Act request should be processed and that statute should govern which documents he should receive. The court converted the injunction to a permanent injunction after ten days without holding an additional evidentiary hearing. Spirko appeals this injunction on three grounds that we will address in turn.

## II. *ROOKER–FELDMAN* DOCTRINE

■ Spirko claims that the federal courts do not have jurisdiction to hear this case under the *Rooker–Feldman* doctrine. That doctrine, a combination of the abstention and res judicata doctrines, stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court. A party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311–12, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). In this case, Spirko contends that the Postal Service is appealing in federal court the decision of the Ohio state courts to release the investigatory files under the Ohio Public Records Statute.

■ Neither the Postal Service nor any other federal defendant was a party to the action in the Ohio courts. Only the Van Wert County sheriff was named as a defendant by Spirko. Clearly, a party cannot be said to be appealing a decision by a state court when it was not a party to the case. The *Rooker–Feldman* doctrine does not apply to bar a suit in federal court brought by a party that was not a party in the preceding action in state court. *Valenti v. Mitchell*, 962 F.2d 288 (3rd Cir.1992). Furthermore, the doctrine may not bar a party against whom there is no state court judgment. *Leaf v. Supreme Court of Wisconsin*, 979 F.2d 589 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2417, 124 L.Ed.2d 639 (1993). Under both of these rules, the district court had jurisdiction to grant the preliminary injunction.

Spirko argues that this Court should adopt the standard employed by the Eleventh Circuit that "the *Rooker* bar can apply only to issues that the plaintiff had a reasonable opportunity to raise." *Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir.1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984). Here Spirko contends that the Postal Service had notice of the state court proceedings and attempted to intervene. When it was denied intervention by the Ohio Court of Appeals, according to Spirko, it had an obligation to appeal that decision to the Ohio Supreme Court, which it did not do. Spirko argues that because the Postal Service had notice and did not exhaust its potential opportunity to intervene, it had "an opportunity to raise" its concerns before the Ohio courts.

■ Even *Wood* held that "*Rooker* is not a requirement that a plaintiff exhaust all conceivable state remedies." *Wood*, 715 F.2d at 1548. A person who was not a party in the state court action did not have an opportunity to litigate its claims. That person must be allowed to bring an action in federal court to attempt to vindicate its perceived rights, otherwise it will have no chance to do so. A party has no obligation to attempt to intervene in a state court action when it is not named in the suit in order to preserve its rights. Because the Postal Service was not a party in state court action in this case, the *Rooker–Feldman* doctrine does not apply and the district court properly exercised its jurisdiction.

## III. JUDICIAL ESTOPPEL

Spirko also contends that the Postal Service should now be judicially estopped from arguing that the Freedom of Information Act

applies to the investigatory records, because in 1987 it successfully argued before a magistrate judge that the Freedom of Information Act did not apply to the same records.

This Circuit has established a rule for determining when judicial estoppel should be invoked. Judicial estoppel "forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Teledyne Industries, Inc. v. NLRB*, 911 F.2d 1214, 1217 (6th Cir.1990). The word "successfully" means that "in order to invoke judicial estoppel, a party must show that the opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court." *Id.* at 1218.

■ The doctrine of judicial estoppel is designed "to protect the integrity of the judicial process" and prevent parties "from playing 'fast and loose with the courts.'" *Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 598–99 (6th Cir.1982). Judicial estoppel serves a different function from other forms of estoppel, such as equitable estoppel or collateral estoppel. *Id.* at 598.

■ Consequently, judicial estoppel may apply in contexts when other forms of estoppel do not. For example, the Supreme Court has expressed reluctance to apply equitable estoppel against the government. "When the government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Heckler v. Community Health Services*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). In addition, the government should not be unduly hindered from changing its position if that shift is the result of a change in public policy. This Circuit, however, has distinguished judicial estoppel from equitable estoppel and has held that judicial estoppel may apply against the government when equitable estoppel would not. *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 474 (6th Cir.1988). Judicial estoppel will be invoked against the government when it conducts what "appears to be a knowing assault upon the integrity of the judicial system." *Id.*

Nonetheless, as we suggested in *Reynolds*, we believe that the rule of judicial estoppel, even when invoked, should be construed narrowly against the government for the policy reasons stated in *Heckler*.

■ In the 1987 case, the Postal Service presented several alternative arguments, all of which were aimed at persuading the magistrate that the Freedom of Information Act did not require release of the investigatory records. The magistrate accepted only one of these arguments as a basis for granting summary judgment for the Postal Service. Consequently, if the government is to be judicially estopped, the estoppel must be limited to a precise argument presented by the government and accepted by the Court. Alternative arguments put forward by the government, but not accepted by a court in a previous case should not be judicially estopped in subsequent cases.

■ In 1987, the magistrate accepted only the Postal Service's arguments based on a section of the Postal Reorganization Act and a section of the Freedom of Information Act that exempt certain records from release under the Freedom of Information Act. The Postal Reorganization Act exempts the Postal Service from many laws and regulations that govern other federal agencies, but specifically applies the Freedom of Information Act to the Postal Service. 39 U.S.C. § 410(b)(1). Yet it provides a special Freedom of Information Act exemption for the Postal Service for "investigatory records, whether or not considered closed, compiled for law enforcement purposes except to the extent available by law to a party other than the Postal Service." 39 U.S.C. § 410(c)(6). The magistrate held that these records were investigatory records compiled for law enforcement purposes. With respect to the question of whether the records were otherwise available by law, he ruled that none of the records could be considered discoverable as exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) or independently under state law discovery rules. Furthermore, he held that the fact that the records were stored in the Van Wert County Sheriff's Of-

fice did not make them available by law to a party other than the Postal Service. The magistrate did not consider whether the Ohio Public Records Statute might make the records otherwise available by law.

In addition, the magistrate cited a section of the Freedom of Information Act that exempts from disclosure items specifically protected under another statute if that statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(B). The magistrate ruled in the alternative that this exemption applied to the Postal Reorganization Act and therefore specifically included the exemption for the Postal Service's investigatory records in 39 U.S.C. § 410(c)(6) within the Freedom of Information Act itself. Thus, the magistrate concluded that even the Freedom of Information Act did not require release of the records. It is these arguments which the Postal Service is now judicially estopped from denying. To this extent, but only to this extent, the Postal Service is estopped. But the Postal Service is free to make any other argument, including the opposite of those it might have argued in the alternative in 1987. The Post Office is certainly not estopped from arguing that it owns, possesses, controls or has custody over the investigatory records.

### IV. THE PERMANENT INJUNCTION

■ Spirko argues that the district court improperly converted the preliminary injunction into a permanent injunction without holding an evidentiary hearing. On December 21, 1993, the district court entered its Memorandum Opinion and its order granting a preliminary injunction to the Postal Service prohibiting the release of the investigatory records to Spirko by the Van Wert County Sheriff's Office pursuant to the Ohio Public Records Statute. At the end of the Memorandum Opinion, the district judge stated: "The parties have extensively briefed the issues in this case, and the Court has held a hearing. Therefore, this Court will make this preliminary injunction permanent unless either defendant files a motion to the contrary within 10 calendar days...." Spirko did file a Motion to Alter or Amend Judg-

ment within ten days. But the district court denied the motion stating that it had already held a hearing at which the legal issues were argued and that "throughout these proceedings Spirko never indicated any need for an evidentiary hearing. To the contrary, the Court was led to believe there were no unresolved issues of fact. It was clear to the parties throughout these proceedings that the oral argument and subsequent decision were to be dispositive. Spirko cannot now claim that there are factual issues to be decided."

Spirko contends that the district court could not make the preliminary injunction permanent without providing prior notice. He argues that the burden of providing this notice to the parties falls on the court. Consequently, he believes that he did not waive any of his rights to an evidentiary hearing by not requesting one. The Supreme Court has made clear how the process for converting a preliminary injunction to a permanent injunction should work:

The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party is thus not required to prove his case in full at a preliminary injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits. In light of these considerations, it is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits.

Should an expedited decision on the merits be appropriate, Rule 65(a)(2) of the Federal Rules of Civil Procedure provides a means of securing one. That Rule permits a court to "order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." Before such an order may issue, however, the courts have commonly re-

quired that "the parties should normally receive clear and unambiguous notice [of the court's intent to consolidate the trial and the hearing] either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases."

*University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981) (citations omitted). *See also Myers v. AP Propane, Inc.,* No. 91–5119, 1991 WL 193460 (6th Cir.) (unpublished). Although the district judge made several inconclusive statements about making a final decision in the case, he did not provide "clear and unambiguous notice" as required by *Camenisch.*

Nonetheless, this Circuit has held that when there is no dispute of material fact alleged, then it may be appropriate for a court to decide a case without an evidentiary hearing. *See United States v. McGee,* 714 F.2d 607, 613 (6th Cir.1983). But, in his motion to Alter or Amend Judgment Spirko alleged several disputes of material fact. As framed by the district court, the central issue in this case is whether the investigatory records in question were "agency records" of the Postal Service as defined in *Forsham v. Harris,* 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980). In particular, the district court's reasoning for granting the injunction rests on its preliminary conclusion that the Postal Service headed the investigation and therefore "created" the records; that the Postal Service "controls" the records by virtue of possessing keys to the filing cabinets; and that the Postal Service "obtained" the records even though they were located in the Van Wert County Sheriff's Office. *See Forsham,* 445 U.S. at 186, 100 S.Ct. at 987 (documents cannot be agency records when they "have not been created or obtained by a federal agency.") Spirko contends that the government itself admitted in the 1987 Freedom of Information Act case that it did not have custody, control or possession of the investigatory materials. The evidence presented by the government in 1987 certainly creates a dispute of material fact as to who actually has custody, control and possession of the records. Spirko also states that some evidence not considered during the hearing for the preliminary injunction suggests that the sheriff's office regulated access to the records, even with respect to Postal Service employees. Therefore, Spirko argues that he should have an opportunity to conduct discovery to determine whether the sheriff's office unilaterally permitted officials from agencies other than the Postal Service to have access to the records. Furthermore, Spirko argues that he should have the opportunity to conduct discovery to determine if the Postal Service actually led the investigation of the murder in 1982, a fact that was accepted by the district court on the basis of one affidavit presented by the Postal Service. Finally, the Postal Service has argued that the Freedom of Information Act applies because it "owns" the records. Since there is no clear title to these records, the issue of who owns the records, if that is a relevant concern for the district court, is also a matter of factual dispute.

At very least, it seems that Spirko has created a dispute as to whether the Postal Service has ownership, control, custody, or possession of these records solely or jointly with the sheriff's office. If the district court were to find that the Postal Service and the sheriff's office have joint ownership, control, custody or possession of these records, that would create a novel legal question.

As a result, we must vacate the permanent injunction and remand this case to the district court to allow Spirko to conduct additional discovery and present his version of the facts at an evidentiary hearing. Otherwise, we would create a rule that would obligate a party to present his full case at a hearing for a preliminary injunction.

Accordingly, the permanent injunction granted by the district court is VACATED and the case is REMANDED for an evidentiary hearing. In all other respects the judgment of the district court is AFFIRMED.