209 F.Supp.2d 799 (2002)
AMERICAN CIVIL LIBERTIES UNION OF TENNESSEE, (ACLU of Tennessee, Inc.), Leeann G. Anderson, Steve Dixon Cates, Joan G. Hill, Dawn Weiss Montgomery, Leon Richard Nuell, Joseph Donald Shaw, and Dale A. Tipps, Plaintiffs,
v.
RUTHERFORD COUNTY, TENNESSEE, and Nancy R. Allen, in her official capacity as County Executive, Defendants.
No. 3:02-0396.
United States District Court, M.D. Tennessee, Nashville Division.
June 21, 2002.
*800 Susan Laurie Kay, Vanderbilt University Law School, Director of Clinical Educ., George Edward Barrett, Douglas S. Johnston, Jr., James Bryan Lewis, Barrett, Johnston & Parsley, Nashville, TN, for American Civil Liberties Union, TN Chapter, Leeann G. Anderson, Steve Dixon Cates, Joan G. Hill, Dawn Weiss Montgomery, Leon Richard Nuell, Joseph Donald Shaw, Dale A. Tipps.
Mathew D. Staver, Erik W. Stanley, Longwood, FL, Lanis L. Karnes-Loeback, Karnes Legal Services of Tennessee, P.C., Jackson, TN, for Rutherford County, Tennessee, Nancy R. Allen.

MEMORANDUM
ECHOLS, District Judge.
Presently pending before the Court is Plaintiffs' Motion for Preliminary Injunction (Docket Entry No. 2) seeking to enjoin the removal of the "Foundations of American Law and Government" display, which includes the text of the Ten Commandments, from the main floor lobby of the Rutherford County Courthouse in Murfreesboro, Tennessee. Defendants have responded in opposition.[1]
The Court conducted a preliminary injunction hearing at Plaintiffs' request on May 6, 2002. The Court has carefully considered the parties' contentions, examined the relevant legal authorities, and reviewed the evidence presented at the hearing. For the reasons explained herein, Plaintiffs' Motion for Preliminary Injunction will be granted.

I. PROCEDURAL HISTORY
On April 18, 2002, Plaintiffs initiated this action against Defendants under 42 U.S.C. § 1983, challenging the posting of the Ten Commandments in a display entitled "Foundations of American Law and Government" in the Rutherford County Courthouse. Plaintiffs, a civil liberties organization in Tennessee with Rutherford County members and individual Rutherford County residents, claim that posting the Ten Commandments violates their rights guaranteed by the Establishment Clause of the First Amendment to the United States Constitution. Specifically, Plaintiffs claim that the Ten Commandments is a religious document and Defendants' purpose in posting the document on the wall of the Courthouse is to promote religion. Further, Plaintiffs allege that adding the other historical documents within the display was merely a feeble attempt to mask the real religious intent of displaying the Ten Commandments. In addition, Plaintiffs contend that the display of the Ten Commandments serves no secular purpose and constitutes an endorsement of religion by a governmental agency. Plaintiffs ask the Court to declare the display unconstitutional, to grant Plaintiffs' application for injunctive relief, and to award Plaintiffs their costs, including reasonable attorney fees, pursuant to 42 U.S.C. § 1988.
*801 In response, Defendants maintain that the current display of the Ten Commandments is constitutional because the document is included as part of a larger display of historical and educational documents. As a result, Defendants posit, the posting has the secular purpose of promoting education and history, does not endorse or advance any religion, and its context would not lead a reasonable observer to conclude that the government is endorsing a religion.

II. PRELIMINARY INJUNCTION STANDARD
Plaintiffs seek a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. A preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved. A district court must consider four factors when determining whether to grant or deny a preliminary injunction:
1. the plaintiff's likelihood of success on the merits;
2. whether the plaintiff may suffer irreparable harm absent the injunction;
3. whether granting the injunction will cause substantial harm to others; and
4. the impact of an injunction upon the public interest.
Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, Tenn., 274 F.3d 377, 400 (6th Cir.2001)(citing Dixie Fuel Co. v. Comm'r of Social Sec., 171 F.3d 1052, 1059-60 (6th Cir.1999)). In the First Amendment context, the likelihood of success on the merits will often be the determinative factor.[2]Id.
A party is not required to prove its case in full at a preliminary injunction hearing. Six Clinics Holding Corp., II v. Cafcomp Sys., Inc., 119 F.3d 393, 400 (6th Cir.1997) (citation omitted). When deciding a motion for preliminary injunction, however, the court must make findings of fact and conclusions of law, which are not binding at a trial on the merits. United States v. Owens, 54 F.3d 271, 277 (6th Cir.1995).

III. FINDINGS OF FACT
On June 17, 1999, the Rutherford County Commission ("Commission") adopted by oral vote a resolution proclaiming the Commission's support of the Ten Commandments and its commitment to defend the right to display the document. The resolution also called upon the "God of Heaven" to preserve the peace He has extended to them and to protect them from ills which come to those who ignore His Law. (Docket Entry No. 1, Ex. D). The full text of the resolution is as follows:

RESOLUTION
We, the below-signed sitting Commission of Rutherford County, in consideration of our great Biblical history of Tennessee, both in our Tennessee Constitution and devotional activities in our heritage, hereby acknowledge the importance of the Ten Commandments of Almighty God and wish to go on record in support of this Magnificent Document and state that we will defend our right *802 to its display to the limit of our ability, against all enemies, domestic and foreign, public and private.
In the enacting of this Resolution, we hereby petition the God of Heaven to preserve the peace which He has so graciously extended to us by our ancient acknowledgement [sic] of the Ten Commandments and beg His continued protection and alleviation of ills which come to those who forget Him and His Law.
This the 17th day of June, 1999.
(Id.) Although the June 17th resolution stated the sense of the Commission to defend its right to display the Ten Commandments, apparently no effort was made to post such a document in any public building. However, when the Commission met on March 14, 2002, the subject was raised again by one of the Commissioners who referred to the Commission's prior resolution in support of defending the right to display the Ten Commandments. He equated the right to defend the display of the Ten Commandments with an endorsement of the posting of the document and urged the Commission to direct the Defendant County Executive to display the Ten Commandments at the City Courthouse. The resulting debate included a verbatim recitation of the Commission's earlier resolution on June 17th. After a lengthy discussion by the Commission members and a public comment period,[3] the Commission's Steering Committee Chairman, Joe Frank Jernigan, proposed the following second resolution, which was seconded and passed:

RESOLUTION
BE IT RESOLVED by the Rutherford County Board of Commissioners that a plaque of the Ten Commandments be posted in the Courthouse.
RESOLVED this 14th day of March, 2002.
(Docket Entry No. 1, Ex. A).
After further discussion, an amendment was offered to the above resolution which provided as follows:

AMENDMENT # 1
Commissioner Trey Gooch moved, seconded by Commissioner Robert Peay, regarding posting historical documents in the Courthouse be sent back to the Steering Committee so that in addition to the Ten Commandments being posted other historical documents may be considered.
(Id.).
Commissioner Gooch stated that his purpose in proposing Amendment # 1 was to require the Steering Committee to consider other historical documents to be displayed with the Ten Commandments to ensure the constitutionality of posting the Ten Commandments. Following more discussion, however, Commissioner Gooch's motion was withdrawn, and a second amendment was made "to wait sixty days to post the Ten Commandments in the Courthouse."[4] (Id.) This motion failed. A third amendment was then suggested by Commissioner Gooch:

*803 AMENDMENT # 3
Commissioner Trey Gooch moved, seconded by Commissioner David Gammon, that the County Executive be required to post the Ten Commandments in the Courthouse on the thirty-fifth day and that the Steering Committee make recommendation regarding other historical documents to be displayed in the Courthouse.
(Id.). Commissioner Gooch's amendment was adopted by a 14 to 7 roll call vote. Afterwards, the original motion by Commissioner Jernigan directing that the Ten Commandments be posted in the Courthouse, as amended by Amendment # 3, passed 16 to 5.
The Commission next considered the subject of posting the Ten Commandments at its meeting on April 11, 2002. At this meeting, the Commission passed, in a 16 to 5 vote, a third resolution pertaining to the posting of the Ten Commandments. The full text of the resolution reads as follows:

RESOLUTION
It is recognized by this Commission that many documents, taken as a whole, have special historical significance to our community, our county, and our country. Some of these documents include, but are not limited to the Preamble to the Tennessee Constitution, our National Motto, our National Anthem, the Declaration of Independence, the Mayflower Compact, the Bill of rights [sic] to the United States Constitution, the Magna Carta and the Ten Commandments.
A sense of historical context, civic duty and responsibility, and the general appreciation and understanding of the law of this land are all desirable components of the education of the citizens of this country. We believe these above named documents positively contribute to the educational foundations and moral character of the citizens of this county. We do not dispute the fact that there may be other documents, speeches, letters, and writings that are equally important as those mentioned above, but it is our opinion that these above mentioned documents, taken as a whole, are valuable examples of documents that may instill qualities desirable of the citizens of this county, and have had particular historical significance to the development of this country.
For all of these reasons, BE IT RESOLVED by the Rutherford County Board of Commissioners that we do support these historical documents, and also support the public display of the above documents.
RESOLVED this 11th day of April, 2002.
(Docket Entry No. 1, Ex. B).
On April 18, 2002, as required by the March 14, 2002, resolution, County Executive Nancy Allen installed a display of ten frames on the first floor main lobby of the Rutherford County Courthouse entitled "Foundations of American Law and Government." The display is located across from the Courthouse stairs and elevator. Anyone who enters the Courthouse from the front door must pass by this display. The display consists of eight documents, and a one-page explanation of the display, mounted in the same size gold frames in a single row. From left to right, the frames include the following: (1) an explanation of each document in the display and its significance entitled "Foundations of American Law and Government Display," (2) the Mayflower Compact, (3) the Declaration of Independence, (4) the Ten Commandments,[5] (5) the Magna Carta (2 frames), (6) *804 the lyrics of The Star Spangled Banner, (7) the Preamble to the Tennessee Constitution, (8) the Bill of Rights of the United States Constitution, and (9) a picture of Lady Justice together with an explanation of its significance. The description of the Ten Commandments in the first frame reads as follows:
The Ten Commandments have profoundly influenced the formation of Western legal thought and the formation of our country. That influence is clearly seen in the Declaration of Independence, which declared that "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the pursuit of Happiness." The Ten Commandments provide the moral background of the Declaration of Independence and the foundation of our legal tradition.
(Pls.' Ex. 3 to Prelim. Inj. Hr'g).
On the day the display was installed, Plaintiffs filed this lawsuit. The individual Plaintiffs regularly use the Courthouse to transact public business, such as obtaining and renewing licenses, registering property, paying taxes, voting, and litigating cases. Concurrently with the filing of their Complaint, Plaintiffs filed their pending Motion for Preliminary Injunction.
The Court conducted a preliminary injunction hearing on May 6, 2002. On May 16, 2002, the Commission voted 18 to 3 to rescind the June 17, 1999, and March 14, 2002, resolutions. (Docket Entry No. 28). Defendants then filed a Notice of Repeal with the Court, asserting that the repeal of the resolutions "further clarifies the original purpose and intention of the Rutherford County Commission to have a display of historical documents in the Rutherford County Courthouse." (Id.)(emphasis in original).

IV. CONCLUSIONS OF LAW

A. Likelihood of Success on the Merits
The First Amendment to the United States Constitution declares, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S. Const. amend. I. Both the Establishment Clause and the Free Exercise Clause of the First Amendment are operative against the states by virtue of the Fourteenth Amendment. Sch. Dist. of Abington Township, Pa. v. Schempp, 374 U.S. 203, 215-16, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); Engel v. Vitale, 370 U.S. 421, 430, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962). At the core of these two clauses is the idea that government cannot "favor religion over nonreligion, nor sponsor a particular sect, nor try to encourage participation in or abnegation of religion." Walz v. Tax Comm'n of New York, 397 U.S. 664, 694, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) (Harlan, J., concurring).
Courts review government actions challenged under the Establishment Clause using the three-part test set forth in Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Under that test, in order for a governmental practice to satisfy the Establishment Clause, the action must (1) reflect a clearly *805 secular purpose; (2) have a primary effect that neither advances nor inhibits religion; and (3) avoid excessive government entanglement with religion.[6]Id. at 612-13, 91 S.Ct. 2105. If the challenged practice or policy fails any of the three prongs of the Lemon test, it violates the Establishment Clause. Stone v. Graham, 449 U.S. 39, 40-41, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980). Although the Lemon test has come under criticism and increasing scrutiny in recent years, the Supreme Court has not rejected it, and lower courts continue to apply it when deciding Establishment Clause disputes. Ind. Civil Liberties Union v. O'Bannon, 259 F.3d 766, 770-774 (2001), cert. denied, ___ U.S. ___, 122 S.Ct. 1173, 152 L.Ed.2d 117 (2002); Books v. City of Elkhart, Ind., 235 F.3d 292, 301 (7th Cir.2000), cert. denied, 532 U.S. 1058, 121 S.Ct. 2209, 149 L.Ed.2d 1036 (2001); ACLU of Ohio v. Capitol Square Review & Advisory Bd., 243 F.3d 289, 305-08 (6th Cir.2001)(noting that "five of the current members of the Supreme Court have, on different occasions, expressed reservations about the Lemon test" but applying the test in addition to Justice O'Connor's endorsement test).
In a separate concurring opinion in Lynch v. Donnelly, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), Justice O'Connor stated that the second and third prongs of the Lemon test should be focused on whether a governmental action was an "endorsement" of religion. Id. at 690-94, 104 S.Ct. 1355 (O'Connor, J., concurring). In County of Allegheny v. ACLU, Greater Pittsburgh Chapter, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), the Supreme Court formally adopted this refinement of the Lemon test. Id. at 593-94, 104 S.Ct. 1355. "Courts in this circuit treat the endorsement test as a refinement or clarification of the Lemon analysis ...." ACLU of Ky. v. McCreary Co., 96 F.Supp.2d 679, 685 (E.D.Ky.2000)(citing Granzeier v. Middleton, 173 F.3d 568, 573 (6th Cir.1999))(hereinafter "McCreary I"). Thus, in analyzing the second prong of the Lemon test, the Court will focus on whether the governmental action of the Rutherford County Commission "has the purpose or effect of conveying a message of endorsement or disapproval of religion." Edwards v. Aguillard, 482 U.S. 578, 585, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987).

1. Whether the Rutherford County Commission Acted With a Secular Purpose

"In considering the purpose prong of the Lemon test, the focus of the inquiry is on the intentions of the government." Coles v. Cleveland Bd. of Educ., 171 F.3d 369, 383 (6th Cir.1999). The Court must determine whether the Commission intended to convey a message of endorsement or disapproval of religion, Edwards, 482 U.S. at 585, 107 S.Ct. 2573, when it passed the resolution and implemented the posting of the "Foundations" display. The government's purpose need not be "exclusively secular." Lynch, 465 U.S. at 681 n. 6, 104 S.Ct. 1355. However, a practice violates the Establishment Clause if it is "entirely motivated by a purpose to advance religion." Wallace v. Jaffree, 472 U.S. 38, 56, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985).
Thus, in this case, the Court must determine whether the Commission, in passing the resolutions requiring the posting of the *806 "Foundations of American Law and Government" display, was motivated entirely by religious considerations or whether the Commission's actual intent was for the display to serve the secular purpose of educating Courthouse visitors about historic documents that have particular significance to the development of this country. Lynch, 465 U.S. at 680, 104 S.Ct. 1355 ("The Court has invalidated legislation or governmental action on the ground that a secular purpose was lacking, but only when it has concluded there was no question that the statute or activity was motivated wholly by religious considerations."). In making this determination, the Court will consider the totality of the circumstances: the Commission's proffered purpose, the history of the display, and the display itself. McCreary I, 96 F.Supp.2d at 686; O'Bannon, 259 F.3d at 771 ("Beyond assessing the purpose expressly articulated by the state, we ensure that the stated secular purpose is legitimate by also examining the context and content of the display.")
In the instant case, citing the language of the March 2002 resolution, the Commission claims that its purpose in erecting the challenged display is to educate the citizens of Rutherford County about the foundations of American law and government. Normally, courts are deferential to the government's articulated purpose; however, the purpose must be sincere and not a sham. Edwards, 482 U.S. at 586-87, 107 S.Ct. 2573; Coles, 171 F.3d at 384. Furthermore, the requirement of a secular purpose "is not satisfied ... by the mere existence of some secular purpose, however dominated by religious purposes." Lynch, 465 U.S. at 690-91, 104 S.Ct. 1355 (O'Connor, J., concurring).
The Supreme Court has stated that the Ten Commandments "are undeniably a sacred text in the Jewish and Christian faiths" and that "[t]he pre-eminent purpose for posting the Ten Commandments ... is plainly religious in nature." Stone, 449 U.S. at 41, 101 S.Ct. 192. Consequently, the burden shifts to Defendants to identify a "clear secular purpose" for posting the Ten Commandments in the "Foundations" display. Edwards, 482 U.S. at 585, 107 S.Ct. 2573; O'Bannon, 259 F.3d at 771 ("Since displaying the text of the Ten Commandments may have a legitimate secular purpose, the state bears the burden of demonstrating that it has taken steps to obviate its religious purpose.")(internal quotations omitted); Books, 235 F.3d at 303 n. 8; ACLU of Ky. v. McCreary County, Ky., 145 F.Supp.2d 845, 848 (E.D.Ky.2001)(hereinafter "McCreary II")("The government must dilute this religious purpose if a truly secular purpose can be said to exist.").
After reviewing the history of this litigation, particularly the videotapes of the Commission meetings of March and April 2002, it is difficult for the Court to reach any conclusion other than that the sole purpose of erecting the challenged display was for the advancement of a religious purpose. This religious purpose can be identified as early as June 1999 when the Commission passed a resolution supporting the display of a single document  the Ten Commandments, which is inherently a religious document. Stone, 449 U.S. at 41, 101 S.Ct. 192. No other documents were mentioned in this resolution. That the Commission was motivated by the desire to promote a religious message is indicated by the unambiguous language of the June 1999 resolution: the resolution was passed "in consideration of [the Commission's] great Biblical history of Tennessee" and in an attempt to "petition the God of Heaven to preserve the peace" and "beg His continued protection and alleviation of ills which come to those who forget Him and His law." There is no secular purpose discernible from the face of the resolution.
*807 The June 1999 resolution served as the foundation and authority for the Commission's subsequent actions in March and April 2002. When the Commission considered the March and April resolutions, the religious intentions of the Commission as expressed in the June 1999 resolution had been set, and those intentions were never changed or disavowed. Most of the discourse preceding the Commission's votes on the March and April resolutions consisted of extolling the virtues of the Ten Commandments and discussing the extent to which similar religious documents, symbols, and phrases are commonly referenced in the American legal system and government.
The focus of both the Commission's discussion and the public comment period was exclusively on the Ten Commandments. There was no meaningful debate regarding the historical or patriotic significance of the other documents that ultimately comprised the challenged display. In fact, the other documents were not discussed at all and were mentioned by name only when the first paragraph of the resolution was read aloud by the sponsor. Also, there was no discussion of why the other documents were chosen, how they related to each other or the whole, or the educational or historical purpose of the display.
Commissioner Jernigan's original motion on March 14, 2002, mandated the posting of only the Ten Commandments in the Rutherford County Courthouse. Although other amendments to this motion were proposed, Amendment # 3, which ultimately passed, mandated that the County Executive post the Ten Commandments on the thirty-fifth day regardless of whether other historical documents had been selected and approved by the Commission, and regardless of whether any such documents would be posted simultaneously with the Ten Commandments. This legislative history underscores the Commission's religious intent. See McCreary I, 96 F.Supp.2d at 687 ("That the display originally consisted solely of the Ten Commandments and that it was altered  albeit without any legally significant change  only after this lawsuit was filed weigh heavily against the finding of a secular purpose.").
The videotape of the March 14, 2002, Commission meeting reflects that at various times during the meeting, the county attorney attempted to advise the Commission of the Supreme Court's guidelines for posting religious documents or symbols at public buildings and the constitutional ramifications of the Commission's actions. He specifically told the Commission that its actions would be challenged in court and that the reviewing court would examine the Commission's intent in passing the resolution requiring the posting. His message, however, was either misunderstood or ignored. In sum, the evidence leads the Court to conclude that the Commission's proffered reason for erecting the display, to educate the citizens of Rutherford County about the foundations of American law and government and its moral character through the posting of eight historical documents, was a ruse to mask the Commission's actual intent  to promote the Ten Commandments and its religious purpose of educating people of the laws given by God to Moses as recorded at Exodus 20 in the Bible and to encourage people to follow them for the common good.
Although the Commission may have been well intentioned and this may be a laudable goal for many people in this country, it cannot be constitutionally done in the manner in which it has been attempted by the Commission. See ALCU of Tenn. v. Hamilton County, 202 F.Supp.2d 757, 763-64 (E.D.Tenn. May 3, 2002)(finding that in posting the Ten Commandments, the Commission acted with the intent "to *808 induce viewers of the plaques to venerate and obey the Ten Commandments. As the Supreme Court said in Stone v. Graham, this `is not a permissible state objective under the Establishment Clause.'").
A number of courts have considered and rejected the proffered secular purpose(s) of government entities in posting the Ten Commandments alone or in combination with other documents or symbols, primarily because the Ten Commandments is a core religious text: O'Bannon, 259 F.3d at 771 (to "remind society of its core values"); Books, 235 F.3d at 303-04 ("to provide a code of conduct" for citizens and "recognize[] the historical and cultural significance of the Ten Commandments"); Hamilton County, 202 F.Supp.2d at 764 (to "foster obeying the law in the wake of the September 11 tragedy"); McCreary II, 145 F.Supp.2d at 848 (to erect a constitutional display containing the Ten Commandments, "to demonstrate that the Ten Commandments were part of the foundation of American Law and Government," to provide "the moral background of the Declaration of Independence and the foundation of our legal tradition," "to educate the citizens of the county regarding some of the documents that played a significant role in the foundation of our system of law and government," and "to create a limited public forum" for the purpose of displaying such documents); Harvey v. Cobb County, Ga., 811 F.Supp. 669, 677 (N.D.Ga.1993), aff'd, 15 F.3d 1097 (11th Cir.1994), cert. denied, 511 U.S. 1129, 114 S.Ct. 2138, 128 L.Ed.2d 867 (1994)(to recognize a "`historical, jurisprudential cornerstone of American legal significance'").
The Commission has now repealed the June 1999 and March 2002 resolutions, leaving in effect only the April 2002 resolution which sets forth a secular purpose for the display. This attempt to cleanse the Commission's unconstitutional intent fails, as this Court's duty is to determine "whether the government's actual purpose is to endorse or disapprove of religion." Edwards, 482 U.S. at 585, 107 S.Ct. 2573(O'Connor, J., concurring) (emphasis added). In light of the history of the display, as discussed above, the Commission's true purpose is clear. The idea of displaying the Ten Commandments in Rutherford County was born at the Commission meeting on June 17, 1999, when the Commission declared the importance of God's Ten Commandments and stated its intent to defend the right to display them. This initial resolution was the foundation for the next resolution instructing the County Executive to post the document on the thirty-fifth day following the meeting and requesting the Steering Committee to make a recommendation regarding other historical documents that might be posted at the Courthouse. On April 11, 2002, one week before the designated date for the posting as per the Commission's resolution of March 14, 2002, the Commission passed its third resolution which included an attempt to describe an educational secular purpose for displaying other documents with special historical significance. Seven documents were listed to be displayed with the Ten Commandments. This last-minute effort to cloak the Ten Commandments with secular legitimacy does not cure the flawed purpose disclosed by the legislative history. The Commission's wholly religious purpose of posting the Ten Commandments is not negated or reversed by the repeal of the original resolutions, particularly when one considers the circumstances and timing of the repeal. This obvious remedial action was taken subsequent to the filing of this lawsuit and only ten days after the hearing on the preliminary injunction.
In Books, the city passed a resolution proclaiming a secular purpose for the display of a monument on which the Ten Commandments were inscribed after the *809 city's mayor was informed that a lawsuit would be filed unless the monument was removed. 235 F.3d at 296. In rejecting the city's proffered secular purpose for displaying the monument, the Seventh Circuit held that "the City of Elkhart's avowed secular purpose of recognizing the historical and cultural significance of the Ten Commandments, issued on the eve of litigation, `is not sufficient to avoid conflict with the First Amendment.'" 235 F.3d at 304 (quoting Stone, 449 U.S. at 41, 101 S.Ct. 192). The same reasoning applies here.
Based upon the record in the case, the Court finds that the Commission's purpose in posting the "Foundations of American Law and Government" display in the Rutherford County Courthouse was not secular. Accordingly, the display violates the first prong of the Lemon test and is unconstitutional.

2. Whether the Primary Purpose or Effect of the Display is to Endorse Religion[7]
Having failed to meet the first prong of the Lemon test, this Court is required to go no further, for "the First Amendment requires that a statute [or practice] must be invalidated if it is entirely motivated by a purpose to advance religion." Wallace, 472 U.S. at 56, 105 S.Ct. 2479; McCreary I, 96 F.Supp.2d at 687. However, to complete its analysis under Lemon, the Court will determine whether the effect of the Rutherford County "Foundations" display also violates the Establishment Clause.
The second prong of Lemon requires consideration of whether the government's action has the primary effect of advancing or inhibiting religion. 403 U.S. at 612, 91 S.Ct. 2105. The effect prong has more recently been articulated as an endorsement test, which "prohibits speech that a reasonable observer would think is an endorsement of religion by the government." Granzeier, 173 F.3d at 573. In applying the refined effect/endorsement test, the Court must "assess[] the totality of the circumstances surrounding the display to determine whether a reasonable person would believe that the display amounts to an endorsement of religion." Books, 235 F.3d at 304 (citing Allegheny, 492 U.S. at 597, 109 S.Ct. 3086).
Two district courts within the Sixth Circuit have examined displays virtually identical to the Rutherford County Courthouse display and have determined that the displays have the primary effect of advancing or endorsing religion. See ACLU of Ky. v. Grayson County, Ky., No. 4:01cv202 (W.D.Ky. May 15, 2002)(McKinley, J); ACLU of Ky. v. McCreary County, Ky., 145 F.Supp.2d 845 (E.D.Ky.2001)(Coffman, J.).[8] Both judges found that placing the Ten Commandments alongside American historical documents and no other religious symbols or moral codes accentuates its religious nature and sends a message that the county is endorsing one religious code as being on par with the secular symbols and documents cherished by this nation. Grayson County, No. 4:01cv202, Mem. Op. at 9; McCreary II, 145 F.Supp.2d at 851. The judges concluded that the setting of the displays  in county courthouses  had the effect of advancing religion.
*810 This Court, however, views such a display differently and believes that a display of documents, including the Ten Commandments, may be constitutional if properly selected, exhibited, and posted with a true educational motive. Accordingly, the Court respectfully disagrees with the reasoning set forth in McCreary II and adopted in Grayson County. Both opinions cite the Seventh Circuit Court of Appeal's decision in Books, in which the Court held that the city's display of a monument inscribed with the Ten Commandments on the front lawn of the city's municipal building had the primary effect of advancing or endorsing religion, and therefore violated the Establishment Clause. 235 F.3d 292. The monument contained the text of the Ten Commandments along with the all-seeing eye, an American Eagle grasping the American flag, and two small stars of David. Id. at 296. Subjecting the display to "particularly careful scrutiny" because of its placement at the seat of government, the Seventh Circuit found that an objective observer familiar with its history and placement would perceive that the government approved of the law and justice required by the text of the Ten Commandments. Id. at 306-06. The Court further found that the symbols on the monument did not detract from the religious message inherent in the monument, explaining: "the placement of the American Eagle gripping the national colors at the top of the monument hardly detracts from the message of endorsement; rather it specifically links religion ... and civil government." Id. at 307 (citation omitted).
This reasoning seems to be at odds with the Supreme Court's decisions in Lynch v. Donnelly, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), and County of Allegheny v. ACLU, Greater Pittsburgh Chapter, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), in which the Supreme Court found that government displays of purely religious symbols, a creche and a menorah, when those symbols were part of a larger display did not violate the Establishment Clause. In Lynch, the Supreme Court considered whether the city's annual display of a creche or nativity scene at Christmas violated the Establishment Clause. The display, located in a park in the heart of the city's shopping district, also included a Santa Claus house, reindeer pulling Santa's sleigh, candy-striped poles, a Christmas tree, carolers, cutout figures representing such characters as a clown, an elephant, a teddy bear, hundreds of colored lights, and a large banner reading "SEASON'S GREETINGS." Id. at 671, 104 S.Ct. 1355. In applying the second prong of the Lemon test, the Court examined whether the nativity scene, while religious, could be said to advance religion. Id. at 685-86, 104 S.Ct. 1355. The Court held that given the overwhelmingly secular character of the display, "the inclusion of a single symbol of a particular historic religious event ... [did not] so `taint' the city's exhibit as to render it violative of the Establishment Clause." Id. at 686, 104 S.Ct. 1355.
Five years later in Allegheny, the Supreme Court considered whether two recurring holiday displays located on public property violated the Establishment Clause: (1) a creche placed on the Grand Staircase of the county courthouse, surrounded on three sides by a wooden fence, decorated with poinsettias and a sign proclaiming "Glory to God in the Highest!", id. at 580-81, 109 S.Ct. 3086, and (2) a menorah displayed in front of the municipal building next to a Christmas tree, with a sign below the tree that read "Salute to Liberty," Id. at 587, 109 S.Ct. 3086. The Court held that the creche displayed violated the Establishment Clause because "nothing in the content of the display detracts from the creche's religious message" because it stood alone as "the single element *811 of the display on the Grand Staircase," which was "the `main' and `most beautiful part' of the building." Id. at 598-99, 109 S.Ct. 3086. Conversely, the Court held that the menorah display was constitutional because it created an "overall holiday setting" consisting of both religious and secular symbols. Id. at 614, 109 S.Ct. 3086 (Blackman, J.).
This Court agrees with the well-reasoned dissent by Chief Justice Rehnquist and Justices Scalia and Thomas in the Court's denial of certiorari in Books. 532 U.S. 1058, 121 S.Ct. 2209, 149 L.Ed.2d 1036 (2001). Addressing the effect prong of the Lemon test, the Justices wrote:
In Allegheny, and in Lynch, we recognized the importance of context in evaluating whether displays or symbols with religious meaning send an "unmistakable message" of government support for, or endorsement of, religion.
Considering the Ten Commandments monument in the context in which it appears, it sends no such message. The city has displayed the monument outside the Municipal Building, which houses the local courts and local prosecutor's office. This location emphasizes the foundational role of the Ten Commandments in secular, legal matters. Indeed, a carving of Moses holding the Ten Commandments, surrounded by representations of other historical legal figures, adorns the frieze on the south wall of our courtroom, and we have said that the carving "signals respect not for great proselytizers but for great lawgivers." Similarly, the Ten Commandments monument and the surrounding structures convey that the monument is part of the city's celebration of its cultural and historical roots, not a promotion of religious faith. To that end, the monument shares the lawn outside the Municipal Building with the Revolutionary War Monument, which honors the Revolutionary War soldiers buried in Elkhart County, and a structure called the "Freedom Monument." Above the entrance to the building is a bas-relief of an Elk's head, and the words "DEDICATUM JUSTITIAM." Considered in that setting, the monument does not express the city's preference for particular religions or religious belief in general. It simply reflects the Ten Commandments' role in the development of our legal system, just as the war memorial and Freedom Monument reflect the history and culture of the city of Elkhart. Perhaps that is why, for four decades, no person has challenged the monument as an unconstitutional endorsement of religion.
Id. at 2112 (internal citation omitted).
Like the creche in Lynch and the menorah in Allegheny, the Ten Commandments plaque at issue in the instant case stands not alone, but as part of a larger display. This context, which is important in evaluating whether the display conveys an "unmistakable message" of government support for or endorsement of religion, distinguishes the "Foundations" display from those displays where the government posted the Ten Commandments alone in government buildings. Courts examining stand-alone displays have, without much difficulty, found them to be violative of the First Amendment because they endorsed religion. See Hamilton Co., 202 F.Supp.2d at 764-66 (Ten Commandments plaques posted alone in county courthouse and municipal building unconstitutional); Harvey, 811 F.Supp. at 678 ("Here, too, the display stands alone in the alcove, and there are no countervailing secular passages or symbols."); cf. Allegheny, 492 U.S. at 598, 109 S.Ct. 3086 (creche display unconstitutional since it stood alone on the Grand Staircase of the county courthouse building).
In this case, however, the "Foundations" display contains eight documents, only one *812 of which is religious in nature. The presence of the eight other documents, all with historical and patriotic significance to our nation and to the state of Tennessee, helps to place the Ten Commandments in the context of being a historic document of moral laws which served an important role in the development of our country's legal foundation. Thus, the display, taken as a whole, conveys a secular message of patriotism and justice to a reasonable observer. The location of the display at the court-house where justice is administered under our legal system and local government is seated emphasizes the historical and foundational role of the Ten Commandments in secular, legal, and legislative matters. Given the overall historical and secular character of the display here, "the inclusion of a single symbol of a particular historic religious event ... does not so `taint' the ... exhibit as to render it violative of the Establishment Clause." Lynch, 465 U.S. at 686, 104 S.Ct. 1355. Therefore, the Court determines that the display as a whole does not have the primary effect of advancing or endorsing religion.
The Court admits, however, that the documents chosen by the Commission to be displayed with the Ten Commandments are not the most impressive examples of our country's legal and governmental heritage. For example, a more thoughtfully-constructed display might include, along with the Ten Commandments, quotes from historic lawgivers such as Confucius, Muhammad, King John, Louis IX, or John Marshall, or documents important to the historical development of the law or the governance of mankind, such as the Code of Hammurabi, Justinian's Corpus Juris Civilis, the Napoleonic Code, or Hugo Grotius' Concerning the Law of War and Peace. See Stone, 449 U.S. at 42, 101 S.Ct. 192 (constitutionally permissible to study the Ten Commandments where they "are integrated into the school curriculum, where the Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like"); Suhre v. Haywood County, 55 F.Supp.2d 384, 398 (W.D.N.C.1999)(courtroom sculpture which recounted the historical development of the law, with images of Lady Justice, ancient gods and goddesses, the laws of Rome and the Tribes of Israel, including the Ten Commandments, deemed constitutional because when viewed as a whole, the sculpture did not communicate a governmental endorsement of religion); Harvey, 811 F.Supp. at 678 (an "appropriate educational display" might "`try to include all the various moral, historical, and political influences on our legal system' such as the Code of Hammurabi, the Code of Justinian, and passages from early English cases").
Or, like the friezes on the north and south walls of the United States Supreme Court, the display could include Moses holding the oft-seen tablets containing the Ten Commandments, along with other "great lawgivers,"[9] such as Solomon, Octavian *813 (Caesar Augustus), Charlemagne, Napoleon Bonaparte, and Sir William Blackstone. In other words, governmental bodies who are truly seeking to educate their citizens by showing historical documents or figures relevant to the history of law or the governance of mankind may do so constitutionally if there is a secular purpose for the display and the display does not advance or endorse religion.
Because, however, the Rutherford County Board of Commissioners acted with a wholly religious purpose in erecting the "Foundations" display, the Court concludes that Plaintiffs have shown a strong likelihood of success on the merits.

B. Irreparable Harm
The second factor the Court must consider in determining whether to award a preliminary injunction is whether Plaintiffs may suffer irreparable harm absent the injunction. "The loss of First Amendment freedoms for even minimal periods of time[ ] unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373-74, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (citation omitted). Thus, this factor weighs in Plaintiffs' favor.

C. Harm to Others
The third factor the Court must consider is whether granting the injunction will cause substantial harm to others. If the Court grants Plaintiffs' requested injunction, Defendants will be ordered to remove the Ten Commandments from the "Foundations" display or to remove the entire display from the Rutherford County Courthouse. This directive would involve little effort or expense on the part of Defendants. In the event Defendants later prevail at a trial on the merits, it would not require much effort or expense to restore the display. If the injunction is denied, the display would continue to offend Plaintiffs and other visitors with similar views. The Court finds that this factor weighs in Plaintiffs' favor.

D. The Public Interest
The protection of First Amendment rights and vindication of constitutional violations is always in the public's interest. G & V Lounge, Inc. v. Mich. Liquor Control Comm'n, 23 F.3d 1071, 1079 (6th Cir.1994). On the other hand, the citizens of Rutherford county elected the Commissioners who voted overwhelmingly to post the display in question. The greater public, however, has an interest in upholding the Constitution and laws of this country against intrusions by the government on the rights of its citizens. In this case, the Court finds that this factor, too, weighs in Plaintiffs' favor.

V. CONCLUSION
Based on the foregoing, the Court finds that Plaintiffs' Motion for a Preliminary Injunction shall be GRANTED. Defendants shall be required to remove the Ten Commandments from the "Foundations of American Law and Government" display or to remove the entire display from the Rutherford County Courthouse immediately.
The injunction in this case in no way represents hostility toward religion or a disregard of the important role that religion played in the lives of the founders and citizens of our great nation. As Justice Douglas commented in Zorach v. Clauson, 343 U.S. 306, 313, 72 S.Ct. 679, 96 L.Ed. 954 (1952): "We are a religious people *814 whose institutions presuppose a Supreme Being." As proof of this proposition, "[t]here is an unbroken history of official acknowledgment by all three branches of government of the role of religion in American life from at least 1789." Lynch, 465 U.S. at 674, 104 S.Ct. 1355. Some of these historical and continuing references to religion in our nation's governmental affairs include: (1) the oaths of public officers, court witnesses, and jurors ending with "So help me God," a practice inherited from England and continued by early colonists; (2) the opening of Senate and House of Representative sessions with a prayer, beginning with the First Continental Congress in 1774; (3) the Declaration of Independence, signed in 1776, which states: "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness;" (4) paid full-time chaplains for the Senate and the House, beginning with the First Continental Congress in 1789; (5) paid separate chaplains corps for our military forces, beginning with the First Continental Congress; (6) Presidential proclamations recognizing a National Day of Prayer, beginning in 1775; (7) the official recognition of Thanksgiving as a national holiday on which to give thanks to God, beginning in 1789; (8) the opening of Court sessions with the plea "May God save the United States and this Honorable Court," beginning with Chief Justice John Marshall in 1801; (9) the inscription of "In God We Trust" on coins and all the legal tender of the United States, beginning in 1865; (10) the official recognition of Christmas, the celebration of Christ's birth, as a federal holiday, beginning in 1894; (11) the inclusion of the language "One nation under God" in our Pledge of Allegiance to the American flag, beginning in 1954; and (12) the Congressional decision to prescribe "In God We Trust" as our national motto in 1956.
In spite of the clear influence of religion in the foundation of this country and the development of many of its institutions, the people have not always embraced the same religion. We are continuing to become more diverse as more and more people immigrate to this country and become citizens. But such diversity does not change this nation's religious history. However, religious differences create more deep-seated emotions and harsh reactions than most any other subject. Religious fervor has divided families, friends, neighbors, communities, and even nations. The evening news is filled with accounts of nations embroiled in religious wars and conflicts, some of which are recent and some of which have lasted for generations.
Our nation's founders knew of the persecutions suffered under religious tyranny and intended to insulate this great nation from such fearful predicaments. The First Amendment, therefore, wisely prohibits the establishment of religion by the government. This means that the government cannot take sides with or involve itself with the most popular religion or with any religion. This does not mean that the government abhors religion or is hostile to religion in general or any particular religious belief or denomination. By erecting the current "Foundations" display with a wholly religious purpose, the Defendants here acted in violation of these important tenets, regardless of how popular their purpose or how well-intentioned their actions.
The Court incorporates herein and attaches hereto Plaintiffs' Exhibit 3 to the preliminary injunction hearing for illustrative purposes.
An appropriate Order shall be entered.
*815 
*816 
*817 
*818 

ORDER
Presently pending before the Court is Plaintiffs' Motion for Preliminary Injunction (Docket Entry No. 2), to which Defendants have responded in opposition.[1] For the reasons explained in the Memorandum entered contemporaneously herewith, Plaintiffs' Motion is hereby GRANTED. Defendants are hereby ORDERED to remove the "Foundations of American Law and Government" display from the Rutherford County Courthouse immediately or alternatively, to remove the Ten Commandments from the display immediately.
It is so ORDERED.
NOTES
[1] Also pending is Defendants' Motion to Exclude Videotapes of County Commission Meetings From Evidence at Preliminary Injunction Hearing (Docket Entry No. 17), to which Plaintiffs have responded in opposition. For the reasons set forth orally during the preliminary injunction hearing, Defendants' Motion shall be DENIED.
[2] As explained by the Sixth Circuit in Deja Vu:

This is because the Supreme Court has recognized that even minimal infringement upon First Amendment values constitutes irreparable injury. See Newsom, 888 F.2d at 378. Additionally, if the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment. See Connection Distrib., 154 F.3d at 288. Moreover, "it is always in the public interest to prevent violation of a party's constitutional rights." G & V Lounge, Inc., 23 F.3d at 1079.
274 F.3d at 4000.
[3] Defendant Allen restricted the public comment period to thirty minutes. During that time, eleven citizens of Rutherford County voiced their viewpoints on the posting of the Ten Commandments in the county Court-house. Seven out of eleven speakers spoke against the posting, including a Jewish citizen, a war veteran, and a Protestant pastor. (Pls.' Ex. 1 to Prelim. Inj. Hr'g).
[4] Commissioner Ealy's motion was the product of a discussion between the Commissioners and the city attorney regarding a lawsuit pending at the time in Hamilton County, Tennessee, involving the posting of the Ten Commandments in three public buildings. The city attorney told the Commission that he expected a decision in the Hamilton County matter within sixty days, and that decision would provide legal guidance as to the Commission's actions. (Pls.' Ex. 1 to Prelim. Inj. Hr'g).
[5] As of 9 a.m. on May 6, 2002, the day of Plaintiff's preliminary injunction hearing, the Ten Commandments document contained a scriptural reference at the bottom of the plaque:

Exodus 20:3-17
KING JAMES VERSION.
(Pls.' Ex. 3 to Prelim. Inj. Hr'g). During the injunction hearing, counsel for Defendants stated that as of noon on May 6, 2002, Defendants had replaced the existing Ten Commandments document with a new version, which did not contain the scriptural citation or reference to the version of the Bible from which the text is taken. However, there is no evidence in the record as to this alteration.
[6] Plaintiffs do not contend that the Rutherford County display violates the third prong of the Lemon test. (Docket Entry No. 3 at 6) ("Clearly, this Court is not faced with a situation that triggers Lemon's third prong, as the posting of the Ten Commandments does not result in the kind of excessive entanglement envisioned by the Lemon test."). Thus, the Court confines its analysis to the first and second Lemon prongs.
[7] Plaintiffs do not contend that the display inhibits religion, so the Court confines its inquiry to the question of whether the display's primary effect is one of advancement or endorsement of religion.
[8] Judge Coffman's decision is on appeal to the Sixth Circuit. McCreary, Sixth Circuit Case No. 01-5935. After issuing an injunction, Judge McKinley stayed the Grayson County case pending the resolution of the appeal to the Sixth Circuit in McCreary. Case No. 4:01cv202 (Docket Entry No. 22 at 13).
[9] As Justice Stevens explained in Allegheny:

Application of a strong presumption against the public use of religious symbols ... will prohibit a display only when its message, evaluated in the context in which it is presented, is nonsecular. For example, a carving of Moses holding the Ten Commandments, if that is the only adornment on a courtroom wall, conveys an equivocal message, perhaps of respect for Judaism, for religion in general, or for law. The addition of carvings depicting Confucius and Muhammad may honor religion, or particular religions, to an extent that the First Amendment does not tolerate any more than it does "the permanent erection of a large Latin cross on the roof of city hall." Placement of secular figures such as Caesar Augustus, William Blackstone, Napoleon Bonaparte, and John Marshall alongside these three religious leaders, however, signals respect not for great proselytizers but for great lawgivers. It would be absurd to exclude such a fitting message from a courtroom, as it would to exclude religious paintings by Italian Renaissance masters from a public museum.
492 U.S. at 652-5, 109 S.Ct. 30863 (Stevens, J., concurring in part, dissenting in part) (internal citations omitted).
[1] Also pending is Defendants' Motion to Exclude Videotapes of County Commission Meetings From Evidence at Preliminary Injunction Hearing (Docket Entry No. 17), to which Plaintiffs have responded in opposition. For the reasons set forth orally during the preliminary injunction hearing, Defendants' Motion to exclude the videotapes is hereby DENIED.